**Declaration of Kerry-Ann Wilson**

I, Kerry-Ann Wilson, hereby declare as follows:

1. The facts set forth in this declaration are based on my personal knowledge and experience. If called as a witness, I could and would testify competently to these facts.

2. I work for Ram Realty Advisors ("Ram") as Director of Development and worked on behalf of the Permittees, Coral Reef Retail LLC, Coral Reef RESI PH 1 LLC and RAMDEV LLC (collectively, "Coral Reef") in pursuing the Incidental Take Permit (the "Permit").

3. Coral Reef is the developer of an environmentally conscious, mixed-use project, known as Coral Reef Commons, which is located in unincorporated Miami-Dade County, Florida, near SW 152 Street and SW 127 Avenue and adjacent to Zoo Miami. The Coral Reef Commons project will include the development of approximately 83 acres of land, creating, among other things, residences, retail-shopping, recreational facilities, and a school, and will restore and preserve in perpetuity more than an additional 100 acres of wildlife habitat.

4. I first started working on the project in May 2011.

**Irreparable Harm to Coral Reef**

5. Coral Reef is suffering costs each day the Coral Reef Commons project is enjoined. To date, Coral Reef has invested in excess of $40 million in the project.

6. Coral Reef is incurring no less than $9,000 per day in project/land carry costs. These amounts include interest on senior debt, preferred return amounts on equity, interest on partner loans, real estate taxes, insurance, and standard security and maintenance of the property.

1

7. Coral Reef is incurring no less than $12,000 per day in site and general contractor delays due to the recent stoppage. This amount includes equipment, personnel, supervision, and other general conditions.

8. Coral Reef is further incurring no less than $27,000 per day in lost rents based solely upon leases currently signed for the commercial space (specifically excluding prospective leases), liquidated damages for late delivery to certain tenants, and potential stabilized net operating income on the residential (phase 1 only) component.

9. The items listed in Nos. 6-8 total no less than $48,000 per day in losses to Coral Reef, amounting to no less than $576,000 in losses over the 12-day period that the temporary injunction is likely to be in place (through December 20, 2017).

10. If a preliminary injunction is issued, further delaying work on the Project beyond December 20, 2017, Coral Reef will face additional costs and potentially catastrophic damages.

11. Coral Reef would continue to incur the costs described above in Nos. 6-8, amounting to no less than $48,000 per day. Coral Reef would be exposed to potential cost escalation of no less than $9,000 per day assuming a 5% annual rate of increase for general contractor costs, which is consistent with recent experience.

12. Continued delay subjects the lands to continued degradation, which would likely increase the cost of restoration as well as the ability to achieve the Permit objectives. Further, based on experience, the ability to reassemble the highly qualified land management and restoration team would likely be hampered by an extended delay.

13. Delay from a preliminary injunction would cost 780 construction jobs and further delay the 575 permanent jobs associated with the project. It further would delay the addition of approximately $3 million in tax revenue, preventing these funds from being available to the local government.

14. A preliminary injunction threatens lease agreements and financing, and could ultimately lead to foreclosure proceedings on Coral Reef's property, which could result in losses of approximately $34,000,000.

**Permitted Work Completed To Date**

15. The development portion of the property is ~86 acres, ~50 of which required clearing. After years of neglect, the property was filled with overgrowth, invasive vegetation and a significant amount of debris (pipes, tires, transmissions, exhaust fans, etc.). In order to clear ~50 acres of land, approximately 10 pieces of heavy equipment are required in accordance with standard construction practice. The equipment on site included front end loaders, bulldozers, excavators, a grader and a street sweeper. In order to maintain the schedule, we had to secure (and pay for) the equipment weeks in advance. This is specialty equipment that is not simply rented at a home improvement superstore. Beginning on November 30, 2017, the equipment was mobilized on to a previously cleared and stabilized area on site. The transport of the equipment occurred via wide load trailers with an escort vehicle during daylight hours, entering the site along 152nd Street.

16. Our first concern was safety. The bulk of the heavy clearing needed to occur prior to a significant amount of labor being activated on site.

17. The work commenced early on December 5, 2017, following safety and other training as prescribed for in the HCP and Permit.

18. Our second concern was schedule. The first step in the normal course of all horizontal development projects is clearing. In this particular case, we have additional schedule constraints due to tenant lease agreements, exposure to construction cost increases, and a desire to complete the mixed-use project in a manner that is safe and convenient for residents, commercial tenants, and the public.

19. Our third concern was the proper phasing of the work. The following critical path items require clearing as a prerequisite:

    a. Installation of silt fence.

    b. Installation of preserve area fence.

    c. Creation of a clear path to access the On-site Preserves to begin restoration work.

    d. Environmental material testing, demolition, and proper disposal of the decommissioned incinerator.

    e. Soil remediation in the areas surrounding the incinerator.

20. Our fourth concern was creating a proper and safe environment to begin prescribed burning. Best management practices call for burning to occur ideally during the winter months.

21. Finally, and perhaps most importantly, all of the clearing was conducted lawfully, in broad daylight, and under the supervision of a qualified professional biologist (not required in the HCP) and HCP Coordinator.

**Compliance with the Temporary Restraining Order**

22. On December 8, 2017, counsel advised Coral Reef that Judge Ungaro entered a Temporary Restraining Order and to stop work on the Coral Reef Commons project until further notice.

23. Coral Reef immediately instructed its contractors to stop all work under the Incidental Take Permit, and they immediately complied.

**Plaintiffs Are Trespassing on the Coral Reef Commons Property and Interfering with Coral Reef's Business Relationships**

24. On December 7, 2017, a representative of the Plaintiff Miami Pine Rocklands Coalition (Al Sunshine) trespassed on the Coral Reef Commons property and verbally assaulted a security guard working for United Special Services.

25. On at least one occasion on December 8, 2017, a representative of the Plaintiff Miami Pine Rocklands Coalition (Al Sunshine) trespassed Coral Reef Commons property and became verbally aggressive with construction workers.

26. On several occasions between December 7, 2017 and December 13, 2017, a representative of the Plaintiff Miami Pine Rocklands Coalition (Cully Waggoner) posted false and detrimental information regarding the project on social media, including direct contact to tenants of the project.

27. On December 11, 2017, a representative of the Plaintiff Miami Pine Rocklands Coalition (Cully Waggoner) made direct contact via email with corporate representatives of at least one tenant of the project. Based upon Mr. Waggoner's own posts to social media, we believe he contacted all tenants of the project. An email Mr. Waggoner sent to a tenant is attached to this Declaration.

I declare under penalty of perjury that the foregoing is true and correct and was executed on December 13, 2017, in Martin County, Florida.

/s/  Kerry-Ann Wilson

**Subject:** FW: Miami FL - Coral Reef - amendment and schedule update

Begin forwarded message:

**From:** Cully Waggoner <cullywaggoner@gmail.com>
**Date:** December 11, 2017 at 1:17:59 PM EST
**To:** <Ronald.Shaich@panerabread.com>, <Blaine.Hurst@panerabread.com>, <Charles.Chapman@panerabread.com>, <Kenneth.Koziol@panerabread.com>, <Scott.Blair@panerabread.com>, <Michael.Bufano@panerabread.com>, <Steve.Cirulis@panerabread.com>, <Richard.Crannick@panerabread.com>, <Louis.DiPietro@panerabread.com>, <Christopher.Hollander@panerabread.com>, <Kathie.Lindemann@panerabread.com>, <John.Meister@panerabread.com>, <Patrick.Mellor@panerabread.com>, <Scott.Millward@panerabread.com>, <Kim.Mullaney@panerabread.com>, <Robert.Passanisi@panerabread.com>, <William.Simpson@panerabread.com>, <Bill.Sleeth@panerabread.com>, <Bryan.Timko@panerabread.com>, <Daniel.Wegiel@panerabread.com>, <jonathan.yohannan@panerabread.com>, <press@panerabread.com>
**Subject: Coral Reef Commons**

Dear Panera Bread

You are getting this e-mail because you are listed on your company web site as being at the executive level and a very important person. This is being sent to a number of people and you may of may not be able to take action on this directly. I'm sending you this e-mail to inform you of things that you may not be aware of that could potentially harm your company and brand name.

You are listed as a future tenant of "Coral Reef Commons", in Miami, Florida. It is a Retail / Restaurant retail center anchored by a Walmart Supercenter and as a yet unnamed second Big Box Store, along with 900 Residential Apartments. The site is the former University of Miami South Campus site next to Zoo Miami in south Miami-Dade County, Florida. It is 138 acres of globally imperiled Pine Rockland and a lifeboat habitat for more than a dozen Endangered or Threatened plant and animal species. About 80 acres of which, were bulldozed on December 7th, 2017 to make way for the development and your new store.

It is also where UM did radioactive experiments on primates for over 20 years and buried the dead primates and radioactive materials in trenches they dug on the site. It was the subject of a Department of Justice Lawsuit in 2006 and Army Corp of Engineers clean up under the Superfund Law. I have the paperwork and reports on this, it over 600 pages and I will send it to you as a pdf file if you like.

I do not know if Ram Realty disclosed any of this to you when you signed on as a new tenant, my guess is they didn't share this information with you. After all what company would want their business on land where globally imperiled Pine Rocklands, found only in Miami-Dade County and parts of the Caribbean, was

1

destroyed.  As well as Endangered Species were going to be killed when it was cleared.  Not to mention that the land was a former radioactive toxic Superfund site?  You have to ask, does your company really want to be associated with this?

Currently there is a Federal Court Lawsuit pending and a Temporary Restraining Order was issued on Friday the 8th to stop any further work at the site.  I can send you a pdf copy of that too if you want.  There is also anther lawsuit and litigation pending as well.  So, your new store is on hold for now pending the Federal Court Ruling.

Let me be clear, I am NOT telling you what to do for your company.  I am simply giving you information you were probably NOT given that could possibly make your company look bad.  I am suggesting you start your due diligence by going to this Facebook page.

https://www.facebook.com/groups/MiamiRPC/

As well as searching the Hashtags #CoralReefCommons and #SaveItDontPaveIt on Social Media and see what you find.

Regards,

--

*Cully Waggoner*
Vice President, Miami Pine Rocklands Coalition

**Personal:**

Cell: 786-374-4932
Home: 305-255-4109
E-Mail:  cullywaggoner@gmail.com;
MSN IM: cullywaggoner@hotmail.com;
Facebook: http://www.facebook.com/cully.waggoner
Twitter: http://twitter.com/CullyWaggoner
LinkedIn:http://www.linkedin.com/in/cullywaggoner
Instagram: http://instagram.com/cullywaggoner
Skype: cully.waggoner