UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:17-cv-24444-UU

---

CENTER FOR BIOLOGICAL DIVERSITY,
*et al.,*

       *Plaintiffs*,

          v.

RYAN ZINKE, in his official capacity as
Secretary of the U.S. Department of the
Interior, *et al.,*

    *Defendants*,

and

CORAL REEF RETAIL, LLC, *et al.,*

    *Intervenor Defendants*.

---

## <u>INTERVENOR DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT</u>

Intervenor Defendants Coral Reef Retail, LLC, Coral Reef RESI PH 1, LLC, and RAMDEV, LLC ("Permittees"), by and through their respective counsel, hereby set forth their Answer and Defenses to Plaintiffs' Complaint [Doc. 1], and in support state:

## I.    <u>INTRODUCTION</u>

1.    The allegations in paragraph 1 of the Complaint characterize the nature of Plaintiffs' case and require no response. Permittees admit that the United States Fish and Wildlife Service ("Service") issued an incidental take permit related to a shopping center and apartment complex called Coral Reef Commons (the "Project"). Permittees deny that the Project will "result in the destruction of some of the last pine rocklands in Florida, literally paving paradise to put up a parking lot," as much of the land in the Project site is currently degraded (including paved areas),

over 100 acres of pine rocklands will be enhanced by the Project, and over 22,000 acres of pine rocklands exist in Miami-Dade County.

2.      Permittees deny the allegation in paragraph 2 that the listed ecosystems are only found in small fragments in south Florida. Permittees admit the remaining allegations in Paragraph 2 regarding the characteristics of pine rocklands.

3.      Permittees deny the allegations in paragraph 3 that Coral Reef Commons will destroy and fragment habitat for the listed species. Permittees deny that the conservation status of plants and animals is best determined by the International Union for the Conservation of Nature and Natural Resources. Paragraph 3 also purports to characterize the published analysis of Service, which speaks for itself and is the best evidence of its contents.  Any allegations in paragraph 3 that are inconsistent with the Service's analysis are denied.

4.      Permittees deny the allegations in paragraph 4.

5.      The allegations in paragraph 5 characterize the nature of Plaintiffs' case and require no response.

6.      Paragraph 6 contains Plaintiffs' request for relief and requires no response.

## II.      PARTIES

7.      Paragraph 7 describes Plaintiff Center for Biological Diversity. Permittees are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in paragraph 7, and on that basis deny them.

8.      Paragraph 8 describes Plaintiff Tropical Audubon Society. Permittees are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in paragraph 8, and on that basis deny them.

#54963687_v1

9.      Paragraph 9 describes Plaintiff Pine Rocklands Coalition. Permittees are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in paragraph 9, and on that basis deny them.

10.     Paragraph 10 describes Plaintiff South Florida Wildlands Association. Permittees are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in paragraph 10, and on that basis deny them.

11.     Paragraph 11 describes the interests of Plaintiffs and their members. Permittees are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in paragraph 11, and on that basis deny them. Permittees deny that any species will be destroyed by the Project.

12.     Paragraph 12 describes the activities and plans of Plaintiffs' members. Permittees are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in paragraph 12, and on that basis deny them. To the extent that paragraph 12 suggests that Plaintiffs' members currently visit the Project property or plan to do so in the future, Permittees deny these allegations as the Project site is privately owned property.

13.     Permittees are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in paragraph 13 related to the interests of Plaintiffs and their members, and on that basis deny them. Permittees deny that the Service is "harming the prospects of recovery for these imperiled species" or "jeopardizing their ability to survive."

14.     Permittees deny the allegations in paragraph 14.

15.     Permittees deny the allegations in paragraph 15 that the Service failed to comply with its legal obligations and that Plaintiffs and their members have suffered procedural injury.

16.     Permittees admit that Ryan Zinke is the Secretary of the Interior. The remaining allegations in paragraph 16 are characterizations of Plaintiffs' case and conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

17.     Permittees admit that the U.S. Department of Interior is an agency of the United States responsible for implementing the Endangered Species Act for non-marine species.

18.     Permittees admit that the Service is an agency of the United States responsible for implementing and ensuring compliance with the Endangered Species Act.

19.     Permittees admit that Greg Sheehan is the Principal Deputy Director of the Service. The remaining allegations in paragraph 19 are characterizations of Plaintiffs' case and conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

20.     Permittees admit that Jim Kurth is the Acting Director of the Service. The remaining allegations in paragraph 20 are characterizations of Plaintiffs' case and conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

21.     Paragraph 21 contains conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

22.     Paragraph 22 contains conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

### III.     JURISDICTION AND VENUE

23.     The allegations in paragraph 23 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

24.     The allegations in paragraph 24 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

25.     The allegations in paragraph 25 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

26.     The allegations in paragraph 26 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

27.     Permittees admit that the Project challenged by Plaintiffs' Complaint is located in Miami-Dade County, Florida. The remaining allegations in paragraph 27 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

28.     The allegations in paragraph 28 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

## IV.     STATUTORY AND REGULATORY FRAMEWORKS

### A.     NATIONAL ENVIRONMENTAL POLICY ACT

29.     The allegations in paragraph 29 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied. The allegations in paragraph 29 purport to describe the National Environmental Policy Act ("NEPA") and 40 C.F.R. § 1500.1, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 29 are inconsistent with NEPA and 40 C.F.R. § 1500.1, those allegations are denied.

30.     The allegations in paragraph 30 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.  The allegations in paragraph 30 purport to describe NEPA and 40 C.F.R. § 1500.1, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 30 are inconsistent with NEPA and 40 C.F.R. § 1500.1, those allegations are denied.

31.     The allegations in paragraph 31 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied. The allegations in paragraph 31

purport to describe NEPA and 40 C.F.R. § 1500 *et seq*., which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 31 are inconsistent with NEPA and 40 C.F.R. § 1500 *et seq*., those allegations are denied.

32.     The allegations in paragraph 32 purport to describe NEPA and 40 C.F.R. § 1508.18, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 32 are inconsistent with NEPA and 40 C.F.R. § 1508.18, those allegations are denied.

33.     The allegations in paragraph 33 purport to describe NEPA and 40 C.F.R. § 1500 *et seq*., which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 33 are inconsistent with NEPA and 40 C.F.R. § 1500 *et seq*., those allegations are denied.

34.     The allegations in paragraph 34 purport to describe NEPA and 40 C.F.R. § 1500 *et seq*., which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 34 are inconsistent with NEPA and 40 C.F.R. § 1500 *et seq*., those allegations are denied.

35.     The allegations in paragraph 35 purport to describe NEPA and 40 C.F.R. § 1500 *et seq*., which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 35 are inconsistent with NEPA and 40 C.F.R. § 1500 *et seq*., those allegations are denied.

36.     The allegations in paragraph 36 purport to describe NEPA and 40 C.F.R. § 1508.27, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 36 are inconsistent with NEPA and 40 C.F.R. § 1508.27, those allegations are denied.

#54963687_v1

37.     The allegations in paragraph 37 purport to describe NEPA and 40 C.F.R. § 1508.27, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 37 are inconsistent with NEPA and 40 C.F.R. § 1508.27, those allegations are denied.

38.     The allegations in paragraph 38 purport to describe NEPA and 40 C.F.R. § 1500 *et seq*., which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 38 are inconsistent with NEPA and 40 C.F.R. § 1500 *et seq*., those allegations are denied.

39.     The allegations in paragraph 39 purport to describe NEPA and 40 C.F.R. § 1508.8, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 39 are inconsistent with NEPA and 40 C.F.R. § 1508.8, those allegations are denied.

40.     The allegations in paragraph 40 purport to describe NEPA and 40 C.F.R. § 1500 *et seq*., which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 40 are inconsistent with NEPA and 40 C.F.R. § 1500 *et seq*., those allegations are denied.

41.     The allegations in paragraph 41 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.   The allegations in paragraph 41 purport to describe NEPA and 40 C.F.R. § 1508.8, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 41 are inconsistent with NEPA and 40 C.F.R. § 1508.8, those allegations are denied.

42.     The allegations in paragraph 42 purport to describe NEPA and 40 C.F.R. § 1506.6, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 42 are inconsistent with NEPA and 40 C.F.R. § 1506.6, those allegations are denied.

#54963687_v1

43.     The allegations in paragraph 43 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.  The allegations in paragraph 43 purport to describe NEPA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 43 are inconsistent with NEPA, those allegations are denied.

44.     The allegations in paragraph 44 purport to describe NEPA and 550 FW 3, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 44 are inconsistent with NEPA and 550 FW 3, those allegations are denied.

45.     The allegations in paragraph 45 purport to describe 550 FW 3, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 45 are inconsistent with 550 FW 3, those allegations are denied.

46.     The allegations in paragraph 46 purport to describe 550 FW 3 and 40 C.F.R. § 1500 *et seq.*, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 46 are inconsistent with 550 FW 3 and 40 C.F.R. § 1500 *et seq.*, those allegations are denied.

47.     The allegations in paragraph 47 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.  The allegations in paragraph 47 purport to describe NEPA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 47 are inconsistent with NEPA, those allegations are denied.

**B.     ADMINISTRATIVE PROCEDURE ACT**

48.     The allegations in paragraph 48 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.  The allegations in paragraph 48 purport to describe the Administrative Procedure Act ("APA"), which speaks for itself and is

#54963687_v1

the best evidence of its contents. To the extent the allegations in paragraph 48 are inconsistent with the APA, those allegations are denied.

49.     The allegations in paragraph 49 purport to describe the APA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 49 are inconsistent with the APA, those allegations are denied.

50.     The allegations in paragraph 50 purport to describe the APA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 50 are inconsistent with the APA, those allegations are denied.

51.     The allegations in paragraph 51 purport to describe the APA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 51 are inconsistent with the APA, those allegations are denied.

52.     The allegations in paragraph 52 purport to describe the APA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 52 are inconsistent with the APA, those allegations are denied.

53.     The allegations in paragraph 53 purport to describe the APA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 53 are inconsistent with the APA, those allegations are denied.

C.      **ENDANGERED SPECIES ACT**

54.     The allegations in paragraph 54 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.  The allegations in paragraph 54 purport to describe the Endangered Species Act ("ESA"), which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 54 are inconsistent with the ESA, those allegations are denied.

#54963687_v1

55.     The allegations in paragraph 55 purport to describe the ESA, 50 C.F.R. § 17.21, and 50 C.F.R. § 17.31, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 55 are inconsistent with the ESA, 50 C.F.R. § 17.21, and 50 C.F.R. § 17.31, those allegations are denied.

56.     The allegations in paragraph 56 purport to describe the ESA, 50 C.F.R. § 17.3, and S. Rep. No. 93-307 (1973), which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 56 are inconsistent with the ESA, 50 C.F.R. § 17.3, and S. Rep. No. 93-307 (1973), those allegations are denied.

57.     The allegations in paragraph 57 purport to describe 50 C.F.R. § 17.3, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 57 are inconsistent with 50 C.F.R. § 17.3, those allegations are denied.

58.     The allegations in paragraph 58 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.  The allegations in paragraph 58 purport to describe the ESA, 50 C.F.R. § 17.22, and 50 C.F.R. § 17.32, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 58 are inconsistent with the ESA, 50 C.F.R. § 17.22, and 50 C.F.R. § 17.32, those allegations are denied.

59.     The allegations in paragraph 59 purport to describe the ESA and 50 C.F.R. § 402.02, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 59 are inconsistent with the ESA and 50 C.F.R. § 402.02, those allegations are denied.

#54963687_v1

60.     The allegations in paragraph 60 purport to describe the ESA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 60 are inconsistent with the ESA, those allegations are denied.

61.     The allegations in paragraph 61 purport to describe the ESA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 61 are inconsistent with the ESA, those allegations are denied.

62.     The allegations in paragraph 62 purport to describe the ESA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 62 are inconsistent with the ESA, those allegations are denied.

63.     The allegations in paragraph 63 purport to describe the ESA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 63 are inconsistent with the ESA, those allegations are denied.

64.     The allegations in paragraph 64 purport to describe the ESA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 64 are inconsistent with the ESA, those allegations are denied.

65.     The allegations in paragraph 65 purport to describe the ESA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 65 are inconsistent with the ESA, those allegations are denied.

66.     The allegations in paragraph 66 purport to describe the ESA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 66 are inconsistent with the ESA, those allegations are denied.

67.     The allegations in paragraph 67 purport to describe the ESA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 67 are inconsistent with the ESA, those allegations are denied.

68.     The allegations in paragraph 68 purport to describe the ESA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 68 are inconsistent with the ESA, those allegations are denied.

69.     The allegations in paragraph 69 purport to describe the ESA and 50 C.F.R. § 402.14, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 69 are inconsistent with the ESA and 50 C.F.R. § 402.14, those allegations are denied.

70.     The allegations in paragraph 70 purport to describe the ESA and 50 C.F.R. § 402.14, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 70 are inconsistent with the ESA and 50 C.F.R. § 402.14, those allegations are denied.

71.     The allegations in paragraph 71 purport to describe the ESA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 71 are inconsistent with the ESA, those allegations are denied.

72.     The allegations in paragraph 72 purport to describe the ESA and 50 C.F.R. § 402.14, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 72 are inconsistent with the ESA and 50 C.F.R. § 402.14, those allegations are denied.

#54963687_v1

73.     The allegations in paragraph 73 purport to describe the ESA and 50 C.F.R. § 17.31, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 73 are inconsistent with the ESA and 50 C.F.R. § 17.31, those allegations are denied.

74.     The allegations in paragraph 74 purport to describe the ESA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 74 are inconsistent with the ESA, those allegations are denied.

75.     The allegations in paragraph 75 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.  The allegations in paragraph 75 purport to describe the ESA and 50 C.F.R. § 402.15, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 75 are inconsistent with the ESA and 50 C.F.R. § 402.15, those allegations are denied.

76.     The allegations in paragraph 76 purport to describe the ESA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 76 are inconsistent with the ESA, those allegations are denied.

## V.     FACTUAL AND PROCEDURAL BACKGROUND

77.     Permittees admit the allegations in paragraph 77 regarding the characterization of Richmond pine rocklands and the Project.

78.     The allegations in paragraph 78 purport to describe a letter from the Service to Permittees on July 15, 2014, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 78 are inconsistent with the July 15, 2014 letter, those allegations are denied.

79.     The allegations in paragraph 79 purport to describe an announcement by Permittees, which speaks for itself and is the best evidence of its contents. To the extent the

#54963687_v1

allegations in paragraph 79 are inconsistent with the Permittee's announcement, those allegations are denied.

80.     The allegations in paragraph 80 purport to describe a May 2015 application to the Service for an incidental take permit ("ITP"), which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 80 are inconsistent with the May 2015 application, those allegations are denied.

81.     The allegations in paragraph 81 purport to describe the May 2015 application to the Service for an ITP, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 81 are inconsistent with the May 2015 application, those allegations are denied.

82.     The allegations in paragraph 82 purport to describe the May 2015 application to the Service for an ITP, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 82 are inconsistent with the May 2015 application, those allegations are denied.  Permittees deny the allegations in paragraph 82 that "RAM Coral Reef intends to destroy 82.61 acres of endangered and threatened species habitat in connection with the Project." 33.3 acres that will be used for the Project are classified as previously developed land that have undergone ground disturbance from prior development. 20.91 acres that will be used for the Project are classified as disturbed uplands that are not pine rocklands. Of the 33 acres of pine rocklands to be developed, approximately two-thirds have a low functional value.  Additionally, the Project will result in restored and enhanced habitat that will support more robust species populations.

83.     Permittees admit that the Service announced the availability of the proposed habitat conservation plan ("HCP") and a draft environmental assessment ("EA") for public review and comment on March 23, 2017.

84.     The allegations in paragraph 84 purport to describe the public comments received in response to the Service's March 23, 2017 announcement of the proposed HCP and draft EA, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 84 are inconsistent with the public comments, those allegations are denied.

85.     The allegations in paragraph 85 purport to describe a December 5, 2017 press release from the Service, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 85 are inconsistent with the December 5, 2017 press release, those allegations are denied.

86.     Permittees deny the allegations in paragraph 86 that the Service did not publish or make available to the public a finding of no significant impact ("FONSI") explaining its decision to issue the ITP. The Service released a Set of Findings describing the Project, chronicling the Service's review of the Project, and explaining its FONSI.

A.      **PINE ROCKLANDS AND PROTECTED PLANTS AND ANIMALS**

87.     The allegations in paragraph 87 characterize the pine rocklands ecological community and appear to describe the Service's Multi-Species Recovery Plan for South Florida chapter on Pine Rocklands, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 87 are inconsistent with that document, Permittees deny them.

88.     The allegations in paragraph 88 characterize the pine rocklands ecological community and appear to describe the Service's Multi-Species Recovery Plan for South Florida chapter on Pine Rocklands, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 87 are inconsistent with the Service's pine rocklands fact sheet, Permittees deny them.

#54963687_v1

89.     Permittees admit that the extent of pine rocklands along the Miami Rock Ridge has been reduced over time. The additional allegations in paragraph 89 purport to describe the ultimate goal of the Service with regard to pine rocklands in the Miami Rock Ridge. As a party in this case, the Service can speak for itself regarding its goals. To the extent the allegations in paragraph 89 are inconsistent with the Service's stated goals, those allegations are denied.

90.     Permittees deny the allegations in paragraph 90. The Everglades National Park Preserve in Miami-Dade County contains a 19,840 tract of pine rocklands.

91.     The allegations in paragraph 91 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.   The allegations in paragraph 91 purport to describe Miami-Dade County ordinances, which speak for themselves and are the best evidence of their contents.  To the extent the allegations in paragraph 91 are inconsistent with the Miami-Dade County ordinances, those allegations are denied.  Permittees deny that 44.94 acres of pine rocklands were designated as NFCs on the Project property. Rather, 49.44 acres of pine rocklands on the Project site were designated as NFCs. Permittees admit that 3.72 acres of rockland hammock were designated as NFCs on the Project property.

92.     The allegations in paragraph 92 characterize the pine rocklands ecological community and appear to describe the Service's Multi-Species Recovery Plan for South Florida chapter on Pine Rocklands, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 92 are inconsistent with the Service's document, Permittees deny them. Additionally, a 2014 plant survey on the Project property identified 113 native taxa, only two of which – the deltoid splurge and tiny polygala – are endangered. The additional allegations in paragraph 92 purport to characterize the Service's preferred technique to prevent destruction and degradation of pine rocklands. As a party in this case, the Service can speak for

#54963687_v1

itself regarding its preferred techniques. To the extent the allegations in paragraph 92 are inconsistent with the Service's stated preferences, those allegations are denied.

93.     The allegations in paragraph 93 characterize the HCP and the EA, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 93 are inconsistent with the HCP and the EA, Permittees deny them. Permittees admit that neither the HCP nor the EA address impacts nor provide incidental take for the pineland sandmat, because the pineland sandmat has never been documented on the Project site and the closest it has been documented is approximately 10 miles away.

94.     The allegations in paragraph 94 do not specify the particular species, except the pineland sandmat, for which no species-specific surveys were allegedly conducted, and therefore Permittees deny them. With regard to the pineland sandmat, Permittees admit that no species survey was conducted as the closest this species has been documented is approximately 10 miles away from the Project site. Additionally, the Service and the Permittees agreed, for purposes of the HCP, that each Covered Species is present, potentially present, or potentially uses the habitat in the Project site during the duration of the requested ITP.

**Bartram's scrub-hairstreak butterfly & Florida leafwing butterfly**

95.     The allegations in paragraph 95 purport to describe a 2014 species listing by the Service, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 95 are inconsistent with the 2014 species listing, those allegations are denied. Permittees admit that the Bartram's scrub-hairstreak butterfly has been documented on the Project site. Permittees deny that the Project site "contains 90.2 acres (nearly a quarter) of the 359 acres of Florida leafwing critical habitat." The Service has designated approximately 10,561 acres of critical habitat for the Florida leafwing.

#54963687_v1

96.     The allegations in paragraph 96 characterize the EA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 96 are inconsistent with the EA, Permittees deny them. Additionally, the Service evaluated the Project's impact on the Bartram's butterfly and the Florida leafwing and concluded that the Project will result in a net increase in critical habitat due to the required habitat restoration efforts that will take place in the Project's preserves and the low functional value of the land to be developed.

97.     Permittees deny that every acre of upland critical habitat is vital to the Bartram's and Florida leafwing due to the threat of sea-level rise. The Service determined that even in the event of sea-level rise, the Project would only impact 2 percent of the Bartram's critical habitat and 3.3 percent of the Florida leafwing's critical habitat. The Service also determined that the Project will more than offset this loss of critical habitat by better managing and enhancing the remaining pine rocklands habitat, which will provide a net increase in the conservation value of the critical habitat.

**Miami tiger beetle**

98.     The allegations in paragraph 98 characterize the Miami tiger beetle and appear to describe a Service fact sheet on Miami tiger beetles or the Service's final rule listing the species, which speak for themselves and are the best evidence of their contents. To the extent the allegations in paragraph 98 are inconsistent with the Service fact sheet on Miami tiger beetles or the Service's final rule listing the species, Permittees deny them. Permittees admit that no comprehensive studies or surveys for Miami tiger beetles have been conducted on the Project site, however no comprehensive survey methodologies exist for the Miami tiger beetle and portions of the Project site were surveyed by Dr. Barry Knisley during Service funded surveys.  Additionally, the Miami tiger beetle is presumed to occur at the Project site under the ITP.

18

99.     Permittees admit that the Project will develop 32.91 acres of pine rocklands habitat and 53.58 acres of disturbed land. Permittees deny that the Project will lead to increased chance for collection of Miami tiger beetles as public utilization of the Project's preserves will be prohibited and the preserves will be marked with signage warning against unauthorized access.

**Florida Bonneted Bat**

100.     Permittees admit the allegations in paragraph 100 that there have been acoustic surveys for Florida bonneted bats but deny Plaintiffs' interpretation of those surveys.  Those surveys speak for themselves and are the best evidence of their contents.  Permittees deny that active bat roost sites have been found on the Project site.  The allegations in paragraph 100 purport to describe a 2013 species listing by the Service, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 100 are inconsistent with the 2013 species listing, those allegations are denied.

101.     Permittees deny that the Project would permanently destroy 86.35 acres of land that is likely used by the Florida bonneted bat, as 12.65 acres to be developed are already covered by impervious surfaces. Permittees admit that the Project will result in the loss of 73.84 acres of habitat that could be used for bat roosting and foraging. However, this loss will be minimized through the establishment of bat boxes at the Project site. Permittees deny that the Service failed to explain how the loss of bat habitat will not reduce the survival or recovery of the species. The remaining allegations in paragraph 101 purport to describe the EA, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 101 are inconsistent with the EA, those allegations are denied.

**Eastern Indigo Snake**

102.    The allegations in paragraph 102 appear to describe a 1978 species listing by the Service, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 102 are inconsistent with the 1978 species listing, those allegations are denied. Permittees admit that eastern indigo snake would likely have historically been found in the Richmond Area but the eastern indigo snake has not been reported in the Project area.

103.    The allegations in paragraph 103 appear to describe a 1978 species listing by the Service, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 103 are inconsistent with the 1978 species listing, those allegations are denied.

104.    The allegations in paragraph 104 purport to describe an article by Krysko et al., which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 104 are inconsistent with the article, those allegations are denied.  Furthermore, the Service has identified recent research that refutes the conclusions of the Krysko et al. paper.

**Gopher Tortoise**

105.    Permittees admit the allegations in paragraph 105 that gopher tortoise is federally listed as threatened throughout its range, except in Florida where the Service considers it a "candidate" for listing under the ESA.  The remainder of paragraph 105 appears to describe a Service fact sheet concerning the gopher tortoise which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 105 are inconsistent with the species fact sheet, those allegations are denied.

106.    Paragraph 106 appears to describe a Service fact sheet concerning the gopher tortoise which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 106 are inconsistent with the species fact sheet, those allegations are denied. Permittees aver that the Project will not result in habitat fragmentation and that the preserves

20

managed as part of the Project will benefit and enhance foraging habitat for the Gopher tortoise within the Richmond Pine Rocklands.

**Florida Brickell-bush & Carter's small-flowered flax**

107.    The allegations in paragraph 107 appear to describe a 2014 species listing by the Service, which speaks for itself and is the best evidence of its contents.   To the extent the allegations in paragraph 107 are inconsistent with the 2014 species listing, those allegations are denied.  Permittees admit the allegations in paragraph 107 regarding the nature of pine rocklands habitat, but note that the Project's HCP will enhance the overall conservation value of the remaining critical habitat on the Project site.

**Tiny polygala & deltoid spurge**

108.    The allegations in paragraph 108 appear to describe a 1985 species listing by the Service, which speaks for itself and is the best evidence of its contents. To the extent the allegations in paragraph 108 are inconsistent with the 1985 species listing, those allegations are denied.  The allegations in paragraph 108 purport to describe surveys and deed restrictions associated with the Project's off-site mitigation area, which speak for themselves and are the best evidence of their contents. To the extent that the allegations in paragraph 108 are inconsistent with the articles and the deed restrictions associated with the Project's off-site mitigation area, those allegations are denied. Permittees deny the allegation that no species surveys were conducted for the off-site mitigation area.

**Pineland sandmat, Everglades bully, Florida pineland crabgrass, and Florida prairie-clover**

109.    Permittees admit that the Service listed the species named in paragraph 109 on November 6, 2017. The remaining allegations in paragraph 109 purport to describe the 2017 listing rule, which is the best evidence of its contents. To the extent that the allegations in paragraph 109

are inconsistent with the 2017 species listing, the allegations in paragraph 109 are denied. Permittees admit that declines for each of these plants are partially attributed to fire suppression, inadequate fire management and resulting habitat loss.  Finally, the allegations in paragraph 109 purport to describe the Service's position on other development projects. As a party in this case, the Service can speak for itself regarding its positions. To the extent the allegations in paragraph 109 are inconsistent with the Service's stated position, those allegations are denied.

110.    Permittees are without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 110 regarding the threats to these plants posed by future sea level rise, and on that basis deny them. Permittees note that regardless of the extent of sea level rise, the Project's impacts to pine rocklands and the species that depend on pine rocklands will be more than offset by the Project's improvement of the functional value of the pine rocklands that is preserved and managed through the Project and that the HCP has specific provisions related to sea level rise.

**B.    HABITAT CONSERVATION PLAN & ENVIRONMENTAL ASSESSMENT**

111.    Permittees agree that the HCP results in a net benefit to listed species in the area, as found by the Service.  The allegations in paragraph 111 purport to describe the draft EA, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 111 are inconsistent with the draft EA, those allegations are denied.

112.    The allegations in paragraph 112 purport to describe the draft HCP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 112 are inconsistent with the draft HCP, those allegations are denied.

113.    The allegations in paragraph 113 purport to describe the HCP and EA, which speak for themselves and are the best evidence of its contents. To the extent that the allegations in

paragraph 113 are inconsistent with the HCP or EA, those allegations are denied. Permittees aver that the Service also analyzed alternatives 1b and 6b.  Hence there were 8 alternatives analyzed.

114.    The allegations in paragraph 114 purport to describe the HCP and EA, which speak for themselves and are the best evidence of its contents. To the extent that the allegations in paragraph 115 are inconsistent with the HCP or EA, those allegations are denied.  Permittees deny the allegations in paragraph 114 that the rejection of the redevelopment alternative was solely due to its lack of economic viability and deny that the HCP lacks financial analysis supporting the conclusion that the redevelopment alternative is not financially viable.

115.    The allegations in paragraph 115 purport to describe the HCP and EA, which speak for themselves and are the best evidence of its contents. To the extent that the allegations in paragraph 115 are inconsistent with the HCP or EA, those allegations are denied. Permittees deny the allegations in paragraph 115 that Alternatives 3, 4, and 5 are "all maximum build out or near-build out scenarios." These Alternatives varied significantly with regard to size of the development and the preserve areas.

116.    The allegations in paragraph 116 purport to describe the HCP and EA, which speak for themselves and are the best evidence of its contents. To the extent that the allegations in paragraph 116 are inconsistent with the HCP or EA, those allegations are denied.

117.    Permittees deny the allegations in paragraph 117.

118.    The allegations in paragraph 118 purport to describe the HCP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 118 are inconsistent with the HCP, those allegations are denied.

119.    Permittees deny the allegations in paragraph 119.  The allegations in paragraph 119 purport to describe the HCP, which speaks for itself and is the best evidence of its contents. To the

23

extent that the allegations in paragraph 119 are inconsistent with the HCP, those allegations are denied.

120.    Permittees deny the allegations in paragraph 120.  The allegations in paragraph 120 purport to describe the HCP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 120 are inconsistent with the HCP, those allegations are denied.

121.    Permittees deny the allegations in paragraph 121.  The allegations in paragraph 121 purport to describe the HCP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 121 are inconsistent with the HCP, those allegations are denied.

122.    Permittees deny the allegations in paragraph 122.

123.    Permittees admit the allegations in paragraph 123 that the property has not been fire managed in the past and that fire management is an important component of the Project's proposed habitat restoration. Permittees deny the allegations in paragraph 123 that fire management will pose human health risks or will be difficult to implement. The HCP contains a Fire Reintroduction and Prescribed Burn Plan that prescribes the safety protocols that will be followed to ensure that prescribed burning will occur and will be conducted safely. Prescribed burning currently occurs within the Richmond Area at Penny Thompson Park and Martinez Pineland.

124.    The allegations in paragraph 124 purport to describe the HCP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 124 are inconsistent with the HCP, those allegations are denied. Permittees deny the allegations in paragraph 124 that the HCP provides double accrediting for the removal of exotics and the percent of native vegetation cover. These characteristics are distinct criteria for healthy pine rocklands

24

habitat and the absence of invasive plants is not synonymous with the presence of desirable native species.

125.    Permittees deny the allegations in paragraph 125 that the post-construction valuations assigned were aspirational or overly optimistic.

126.    Permittees deny the allegations in paragraph 126 that the HCP did not explain how the habitat polygons used to measure ecosystem value were delineated.

127.    The allegations in paragraph 127 purport to describe the HCP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 127 are inconsistent with the HCP, those allegations are denied. Permittees deny the additional allegations in paragraph 127 that the HCP provides no effective financial assurances.

128.    The allegations in paragraph 128 purport to describe portions of the HCP, which speaks for themselves and are the best evidence of their contents. To the extent that the allegations in paragraph 128 are inconsistent with the HCP, those allegations are denied. Permittees deny the allegations in paragraph 128 that Appendix L and Appendix N of the HCP are missing essential details, as those details are provided in the body of the HCP.

129.    The allegations in paragraph 129 purport to describe a transportation analysis, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 129 are inconsistent with the transportation analysis, those allegations are denied. Additionally, Permittees deny the allegation in paragraph 129 that neither then HCP nor the EA address the impacts of future traffic increases.

130.    The allegations in paragraph 130 purport to describe the transportation analysis, HCP, and the EA, which speaks for themselves and are the best evidence of their contents. To the extent that the allegations in paragraph 130 are inconsistent with the transportation analysis, HCP,

and the EA those allegations are denied. Plaintiffs admit that the Miami Wilds project was not included in the cumulative analysis because it is not a project that is reasonably certain to occur.

131.    Permittees deny the allegations in paragraph 131 that the receipt of thousands of letters and comments, most in the form of form letters, render the Project "highly controversial."

132.    Permittees deny the allegations in paragraph 132 that the habitat functional assessment used for the Project will establish a precedent for future actions. The habitat functional assessment was designed specifically for the Project and any future projects will be independently evaluated by the Service.

133.    The allegations in paragraph 133 purport to describe surveys conducted by the Permittees, which speaks for themselves and are the best evidence of their contents. To the extent that the allegations in paragraph 133 are inconsistent with the Permittee's surveys, those allegations are denied.

134.    Permittees deny the allegations in paragraph 134 that no species-specific surveys for the eastern indigo snake and rim rock crowned snake were conducted. Pedestrian survey transects were used throughout the Project's development footprint. Additionally, because these species are elusive and difficult to detect through surveys, the species were presumed to be present at the Project site so their presence would not be underestimated.

135.    The allegations in paragraph 135 purport to describe the HCP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 135 are inconsistent with the HCP, those allegations are denied.

136.    The allegations in paragraph 136 purport to describe surveys conducted by the Permittees, which speak for themselves and are the best evidence of their contents. To the extent

#54963687_v1

that the allegations in paragraph 136 are inconsistent with the Permittee's surveys, those allegations are denied.

137.     Permittees deny the allegations in paragraph 137 that the off-site mitigation area was not surveyed for any species. Several species have been documented on the off-site mitigation area via surveys. Additionally, for the purposes of the ITP, the species were presumed to exist in the off-site mitigation area.

## C.     THE BIOLOGICAL OPINION

138.     The allegations in paragraph 138 purport to describe the biological opinion ("BiOP"), which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 138 are inconsistent with the BiOp, those allegations are denied.

139.     The allegations in paragraph 139 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 139 are inconsistent with the BiOp, those allegations are denied.

140.     The allegations in paragraph 140 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 140 are inconsistent with the BiOp, those allegations are denied.

141.     The allegations in paragraph 141 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 141 are inconsistent with the BiOp, those allegations are denied.

142.     The allegations in paragraph 142 purport to describe the conference opinion, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 142 are inconsistent with the conference opinion, those allegations are denied.

#54963687_v1

143.    The allegations in paragraph 143 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 143 are inconsistent with the BiOp, those allegations are denied.

144.    The allegations in paragraph 144 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 144 are inconsistent with the BiOp, those allegations are denied.

145.    The allegations in paragraph 145 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 145 are inconsistent with the BiOp, those allegations are denied.

146.    The allegations in paragraph 146 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 146 are inconsistent with the BiOp, those allegations are denied.

147.    The allegations in paragraph 147 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 147 are inconsistent with the BiOp, those allegations are denied.

148.    The allegations in paragraph 148 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 148 are inconsistent with the BiOp, those allegations are denied.

149.    The allegations in paragraph 149 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 149 are inconsistent with the BiOp, those allegations are denied.

#54963687_v1

150.     The allegations in paragraph 150 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 150 are inconsistent with the BiOp, those allegations are denied.

151.     The allegations in paragraph 151 purport to describe the incidental take statement, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 151 are inconsistent with the incidental take statement, those allegations are denied.

152.     The allegations in paragraph 152 purport to describe the HCP, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 152 are inconsistent with the HCP, those allegations are denied.

## VI.     CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**

153.     Permittees incorporate by reference their answers to Paragraphs 1 through 152 set forth above.

154.     The allegations in paragraph 154 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

155.     The allegations in paragraph 155 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

156.     The allegations in paragraph 156 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

157.     The allegations in paragraph 157 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

158.     The allegations in paragraph 158 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

#54963687_v1

159.     The allegations in paragraph 159 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

**SECOND CLAIM FOR RELIEF**

160.     Permittees incorporate by reference their answers to Paragraphs 1 through 159 set forth above.

161.     The allegations in paragraph 161 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

162.     The allegations in paragraph 162 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

163.     The allegations in paragraph 163 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

164.     The allegations in paragraph 164 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

165.     The allegations in paragraph 165 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

166.     The allegations in paragraph 166 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

167.     The allegations in paragraph 167 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

168.     The allegations in paragraph 168 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

169.     The allegations in paragraph 169 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

170.    The allegations in paragraph 170 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

171.    The allegations in paragraph 171 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

## PRAYER FOR RELIEF

The remainder of the Complaint consists of Plaintiffs' request for relief, to which no response is required. To the extent a response is required, Permittees deny the Plaintiffs are entitled to the relief requested, or to any relief.

## GENERAL DENIAL

Permittees deny any allegations of the Complaint, whether express or implied, that are not specifically admitted, denied or qualified herein.

Permittees deny any allegations of the Complaint to the extent that Plaintiffs' invoked documents or relied on characterizations of documents that are not part of the official administrative record.

## AFFIRMATIVE DEFENSES

1.    Plaintiffs lack standing to bring their claims in this action.

2.    The Complaint fails to state a claim upon which relief can be granted.

3.    The Court lacks subject matter jurisdiction over Plaintiffs' claims.

4.    Plaintiffs failed to raise each of their claims before the Service and otherwise failed to exhaust their administrative remedies.

5.    Plaintiffs' claims are barred by the doctrine of waiver.

6.    Plaintiffs' claims are barred by the doctrine of ripeness.

#54963687_v1

7.      Any affirmative defenses pleaded by other defendants and not specifically pleaded by the Permittees are incorporated herein to the extent they do not conflict with the affirmative defenses expressly stated above.

8.      Permittees hereby give notice that they intend to rely upon any other defenses that may become available or appear during the proceedings of this case and hereby reserve the right to amend their answer to assert such a defense.

WHEREFORE, Permittees demand judgment dismissing the Complaint with prejudice and with costs and such other and further relief as is deemed just and proper.

Respectfully submitted,

By: /s/ Martin J. Alexander                      By:  /s/ George S. LeMieux
HOLLAND & KNIGHT LLP                         GUNSTER
Florida Bar No. 346845                           Florida Bar Number. 16403
Martin.alexander@hklaw.com                   glemieux@gunster.com
701 Brickell Avenue, Suite 3300               600 Brickell Avenue, Suite 3500
Miami, FL 33131                                   Miami, Florida  33131
Telephone: 305-374-8500                        Telephone:  305-376-6000
Facsimile:  305-789-7799                        Facsimile:   305-376-6010
*Attorney for Intervenor Defendants*          *Attorney for Intervenor Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2018, the foregoing was filed using the Court's CM/ECF system and served via email or transmission of Notices of Electronic Filing generated by CM/ECF to all counsel by the Court's CM/ECF system.

By: /s/ Martin J. Alexander

#54963687_v1