## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:17-cv-24444-UNGARO/TURNOFF

CENTER FOR BIOLOGICAL DIVERSITY;
TROPICAL AUDUBON SOCIETY; MIAMI PINE
ROCKLANDS COALITION; and SOUTH
FLORIDA WILDLANDS ASSOCIATION,

      Plaintiffs,

v.

RYAN ZINKE, in his official capacity as Secretary
of the U.S. DEPARTMENT OF THE INTERIOR;
U.S. FISH AND WILDLIFE SERVICE; GREG
SHEEHAN, in his official capacity as Principal
Deputy Director of the U.S. Fish and Wildlife Service;
and JIM KURTH, in his official capacity as Deputy
Director for Operations and Acting Director of U.S.
Fish and Wildlife Service,

      Defendants,

and

CORAL REEF RETAIL LLC; CORAL REEF
RESI PH 1 LLC; RAMDEV LLC; and
UNIVERSITY OF MIAMI,

      Intervenor-Defendants.

_____ /

### UNIVERSITY OF MIAMI'S ANSWER AND AFFIRMATIVE DEFENSES
### TO PLAINTIFFS' COMPLAINT

      Intervenor-Defendant University of Miami, by and through its counsel, hereby sets forth

its Answer and Affirmative Defenses to Plaintiffs' Complaint [ECF No. 1], and in support states:

### ANSWER

      University of Miami answers Plaintiffs' Complaint as follows.  Any allegation not

specifically admitted by University of Miami is denied.  To the extent a response to the preamble

or any heading or subheading in the Complaint is deemed required, University of Miami denies any and all allegations contained therein and further denies any liability to Plaintiffs or that Plaintiffs are entitled to any relief whatsoever.   University of Miami further denies any allegations of the Complaint to the extent that Plaintiffs invoked documents or relied on characterizations of documents that are not part of the official administrative record.   University of Miami reserves the right to seek to amend and/or supplement its Answer as may be necessary.

## I.     INTRODUCTION

1.     The allegations in Paragraph 1 of the Complaint characterize the nature of Plaintiffs' case and require no response.   University of Miami admits that the United States Fish and Wildlife Service ("Service") issued an incidental take permit related to a shopping center and apartment complex called Coral Reef Commons (the "Project").   University of Miami denies that the Project will "result in the destruction of some of the last pine rocklands in Florida, literally paving paradise to put up a parking lot," as much of the land on the Project site is currently degraded (including paved areas), over 100 acres of pine rocklands will be enhanced by the Project, and over 22,000 acres of pine rocklands exist in Miami-Dade County.

2.     University of Miami denies the allegation in Paragraph 2 that the listed ecosystems are only found in small fragments in South Florida.   University of Miami admits the remaining allegations in Paragraph 2 regarding the characteristics of pine rocklands.

3.     University of Miami states that the Service's published analysis speaks for itself and is the best evidence of its contents.   University of Miami denies the remaining allegations in Paragraph 3.

4.     University of Miami denies the allegations in Paragraph 4.

5.      The allegations in Paragraph 5 characterize the nature of Plaintiffs' case and require no response.  To the extent any response is required, University of Miami denies the allegations in Paragraph 5 and denies that Plaintiffs are entitled to any relief whatsoever.

6.      Paragraph 6 contains Plaintiffs' request for relief and requires no response.  To the extent any response is required, University of Miami denies the allegations in Paragraph 6 and denies that Plaintiffs are entitled to any relief whatsoever.

## II.      PARTIES

7.      University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 7, and therefore denies them.

8.      University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 8, and therefore denies them.

9.      University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 9, and therefore denies them.

10.      University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 10, and therefore denies them.

11.      University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 11, and therefore denies them.

12.      University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 12 and therefore denies them.

13.      University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 13 regarding the interests of Plaintiffs and their members and therefore denies them.  University of Miami denies the remaining allegations in Paragraph 13.

14.      University of Miami denies the allegations in Paragraph 14.

15.     University of Miami denies the allegations in Paragraph 15.

16.     University of Miami admits that Ryan Zinke is the Secretary of the Interior. University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 16 and therefore denies them.

17.     University of Miami admits that the U.S. Department of Interior is an agency of the United States responsible for implementing the Endangered Species Act for non-marine species.

18.     University of Miami admits that the Service is an agency of the United States responsible for implementing and ensuring compliance with the Endangered Species Act.

19.     University of Miami admits that Greg Sheehan is the Principal Deputy Director of the Service.  University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 19 and therefore denies them.

20.     University of Miami admits that Jim Kurth is the Acting Director of the Service. University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 20 and therefore denies them.

21.     University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 21 and therefore denies them.

22.     Paragraph 22 contains conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

### III.     JURISDICTION AND VENUE

23.     University of Miami admits that Plaintiffs purport to assert an action under NEPA, 42 U.S.C. §§ 4321-4370e and the APA, 5 U.S.C. §§ 701-706.  University of Miami denies that Plaintiffs are entitled the relief they seek or to any relief whatsoever.

24.     University of Miami admits that this Court has subject matter jurisdiction over Plaintiffs' claims.  The remaining allegations in Paragraph 24 are conclusions of law that require no response, and to the extent a response is required, the remaining allegations are denied.

25.     University of Miami admits the allegations in Paragraph 25.

26.     The allegations in Paragraph 26 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

27.     University of Miami admits that the Project challenged by Plaintiffs' Complaint is located in Miami-Dade County, Florida and admits that venue is proper here.  The remaining allegations in Paragraph 27 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

28.     University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 28 and therefore denies them.

## IV.     STATUTORY AND REGULATORY FRAMEWORKS

## A.     NATIONAL ENVIRONMENTAL POLICY ACT

29.     University of Miami states that the National Environmental Policy Act ("NEPA") and 40 C.F.R. § 1500.1 speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 29 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

30.     University of Miami states that NEPA and 40 C.F.R. § 1500.1 speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 30 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

31.     University of Miami states that NEPA and 40 C.F.R. § 1500 *et seq.* speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph

31 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

32.     University of Miami states that NEPA and 40 C.F.R. § 1508.18 speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 32 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

33.     University of Miami states that NEPA and 40 C.F.R. § 1500 *et seq.* speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 33 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

34.     University of Miami states that NEPA and 40 C.F.R. § 1500 *et seq.* speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 34 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

35.     University of Miami states that NEPA and 40 C.F.R. § 1500 *et seq.* speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 35 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

36.     University of Miami states that NEPA and 40 C.F.R. § 1508.27 speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 36 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

37.    University of Miami states that NEPA and 40 C.F.R. § 1508.27 speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 37 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

38.    University of Miami states that NEPA and 40 C.F.R. § 1500 *et seq.* speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 38 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

39.    University of Miami states that NEPA and 40 C.F.R. § 1508.8 speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 39 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

40.    University of Miami states that NEPA and 40 C.F.R. § 1500 *et seq.* speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 40 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

41.    University of Miami states that NEPA and 40 C.F.R. § 1508.8 speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 41 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

42.    University of Miami states that NEPA and 40 C.F.R. § 1506.6 speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph

42 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

43. University of Miami states that NEPA speaks for itself and is the best evidence of its contents. The remaining allegations in Paragraph 43 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

44. University of Miami states that NEPA and 550 FW 3 speak for themselves and are the best evidence of their contents. The remaining allegations in Paragraph 44 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

45. University of Miami states that 550 FW 3 speaks for itself and is the best evidence of its contents. The remaining allegations in Paragraph 45 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

46. University of Miami states that 550 FW 3 and 40 C.F.R. § 1500 *et seq.* speak for themselves and are the best evidence of their contents. The remaining allegations in Paragraph 46 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

47. University of Miami states that NEPA speaks for itself and is the best evidence of its contents. The remaining allegations in Paragraph 47 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

B.    **ADMINISTRATIVE PROCEDURE ACT**

48. University of Miami states that the Administrative Procedure Act ("APA") speaks for itself and is the best evidence of its contents. The remaining allegations in Paragraph 48 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

49.     University of Miami states that the APA speaks for itself and is the best evidence of its contents.  The remaining allegations in Paragraph 49 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

50.     University of Miami states that the APA speaks for itself and is the best evidence of its contents.  The remaining allegations in Paragraph 50 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

51.     University of Miami states that the APA speaks for itself and is the best evidence of its contents.  The remaining allegations in Paragraph 51 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

52.     University of Miami states that the APA speaks for itself and is the best evidence of its contents.  The remaining allegations in Paragraph 52 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

53.     University of Miami states that the APA speaks for itself and is the best evidence of its contents.  The remaining allegations in Paragraph 53 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

**C.     ENDANGERED SPECIES ACT**

54.     University of Miami states that the Endangered Species Act ("ESA") speaks for itself and is the best evidence of its contents.  The remaining allegations in Paragraph 54 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied

55.     University of Miami states that the ESA, 50 C.F.R. § 17.21, and 50 C.F.R. § 17.31 speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 55 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

56.     University of Miami states that the ESA, 50 C.F.R. § 17.3, and S. Rep. No. 93-307 (1973), speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 56 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

57.     University of Miami states that 50 C.F.R. § 17.3 speaks for itself and is the best evidence of its contents.  The remaining allegations in Paragraph 57 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

58.      University of Miami states that the ESA, 50 C.F.R. § 17.22, and 50 C.F.R. § 17.32 speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 58 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

59.     University of Miami states that the ESA and its implementing regulations, including 50 C.F.R. § 402.02, speak for themselves and are the best evidence of their contents. The remaining allegations in Paragraph 59 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

60.     University of Miami states that the ESA, including Section 7 thereof, speaks for itself and is the best evidence of its contents.  The remaining allegations in Paragraph 60 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

61.     University of Miami states that the ESA and 50 C.F.R. §§ 402.02(d), 402.14(c) speaks for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 61 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

62.     University of Miami states that the ESA and its implementing regulations speak for themselves and are the best evidence of their contents.   The remaining allegations in Paragraph 62 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

63.     University of Miami states that the ESA and its implementing regulations speak for themselves and are the best evidence of their contents.   The remaining allegations in Paragraph 63 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

64.     University of Miami states that the ESA and its implementing regulations speak for themselves and are the best evidence of their contents.   The remaining allegations in Paragraph 64 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

65.     University of Miami states that the ESA and its implementing regulations speak for themselves and are the best evidence of their contents.   The remaining allegations in Paragraph 65 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

66.     University of Miami states that the ESA and its implementing regulations speak for themselves and are the best evidence of their contents.   The remaining allegations in Paragraph 66 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

67.     University of Miami states that the ESA and its implementing regulations speak for themselves and are the best evidence of their contents.   The remaining allegations in

Paragraph 67 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

68.     University of Miami states that the ESA speaks for itself and is the best evidence of its contents.  The remaining allegations in Paragraph 68 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

69.     University of Miami states that the ESA and 50 C.F.R. § 402.14 speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 69 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

70.     University of Miami states that the ESA and 50 C.F.R. § 402.14 speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 70 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

71.     University of Miami states that the ESA speaks for itself and is the best evidence of its contents.  The remaining allegations in Paragraph 71 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

72.     University of Miami states that the ESA and 50 C.F.R. § 402.14 speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 72 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

73.     University of Miami states that the ESA and 50 C.F.R. § 17.31 speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph

73 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

74.     University of Miami states that the ESA speaks for itself and is the best evidence of its contents.  The remaining allegations in Paragraph 74 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

75.     University of Miami states that the ESA and 50 C.F.R. § 402.15 speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 75 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied

76.     University of Miami states that the ESA and its implementing regulations speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 76 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

## V.     FACTUAL AND PROCEDURAL BACKGROUND

77.     University of Miami admits the allegations in Paragraph 77 regarding the characterization of Richmond pine rocklands and the Project.

78.     University of Miami states that the July 15, 2014 letter from the Service speaks for itself and is the best evidence of its contents.  University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 78 and therefore denies them.

79.     The allegations in Paragraph 79 purport to describe an announcement by Intervenor-Defendants Coral Reef Retail, LLC, Coral Reef RESI PH 1, LLC, and/or RAMDEV, LLC, which speaks for itself and is the best evidence of its contents.  To the extent the

allegations in Paragraph 79 are inconsistent with that announcement, those allegations are denied.

80.     The allegations in Paragraph 80 purport to describe a May 2015 application to the Service for an incidental take permit ("ITP"), which speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 80 are inconsistent with the May 2015 application, those allegations are denied.

81.     The allegations in Paragraph 81 purport to describe the May 2015 application to the Service for an ITP, which speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 81 are inconsistent with the May 2015 application, those allegations are denied.

82.     The allegations in Paragraph 82 purport to describe the May 2015 application to the Service for an ITP, which speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 82 are inconsistent with the May 2015 application, those allegations are denied.  University of Miami denies that "RAM Coral Reef intends to destroy 82.61 acres of endangered and threatened species habitat in connection with the Project."

83.     University of Miami admits that the Service announced the availability of the proposed habitat conservation plan ("HCP") and a draft environmental assessment ("EA") for public review and comment on March 23, 2017.

84.     The allegations in Paragraph 84 purport to describe the public comments received in response to the Service's March 23, 2017 announcement of the proposed HCP and draft EA, which speak for themselves and are the best evidence of their contents.  To the extent the allegations in Paragraph 84 are inconsistent with the public comments, those allegations are denied.

85.     The allegations in Paragraph 85 purport to describe a December 5, 2017 press release from the Service, which speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 85 are inconsistent with the December 5, 2017 press release, those allegations are denied.

86.     University of Miami denies the allegations in Paragraph 86.

A.     **PINE ROCKLANDS AND PROTECTED PLANTS AND ANIMALS**

87.     The allegations in Paragraph 87 characterize the pine rocklands ecological community and appear to describe the Service's Multi-Species Recovery Plan for South Florida chapter on Pine Rocklands, which speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 87 are inconsistent with that document, those allegations are denied.

88.     The allegations in Paragraph 88 characterize the pine rocklands ecological community and appear to describe the Service's Multi-Species Recovery Plan for South Florida chapter on Pine Rocklands, which speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 88 are inconsistent with the Service's pine rocklands fact sheet, those allegations are denied.

89.     University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 89 and therefore denies them.

90.     University of Miami denies the allegations in paragraph 90.

91.     University of Miami states that the Miami-Dade County ordinances speak for themselves and are the best evidence of their contents.  The remaining allegations in Paragraph 91 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.  University of Miami further denies that 44.94 acres of pine rocklands were designated as NFCs on the Project property.  Rather, 49.44 acres of pine rocklands on the

Project were designated as NFCs. University of Miami further admits that 3.72 acres of rockland hammock were designated as NFCs on the Project property.

92.    The allegations in Paragraph 92 characterize the pine rocklands ecological community and appear to describe the Service's Multi-Species Recovery Plan for South Florida chapter on Pine Rocklands, which speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 92 are inconsistent with the Service's document, those allegations are denied. University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 92 regarding the Service's preferred technique to prevent destruction and degradation of pine rocklands and therefore denies them.

93.    The allegations in Paragraph 93 characterize the HCP and the EA, which speak for themselves and are the best evidence of their contents.  To the extent the allegations in Paragraph 93 and footnotes 1-2 are inconsistent with the HCP and the EA, those allegations are denied.

94.    University of Miami admits that no species-specific survey was conducted with regard to the pineland sandmat because that species has never been documented on the Project property.  Responding further, University of Miami states that for purposes of the HCP it was agreed with the Service that each Covered Species is present, potentially present, or potentially uses the habitat in the Project site during the duration of the requested ITP.  University of Miami denies the remaining allegations in Paragraph 94.

***Bartram's scrub-hairstreak butterfly & Florida leafwing butterfly***

95.    The allegations in Paragraph 95 purport to describe a 2014 species listing by the Service, which speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 95 are inconsistent with the 2014 species listing, those allegations are denied.  University of Miami admits that the Bartram's scrub-hairstreak butterfly has been

documented on the Project site, but denies that the Project site "contains 90.2 acres (nearly a quarter) of the 359 acres of Florida leafwing critical habitat."  Responding further, University of Miami states that the Service has designated approximately 10,561 acres of critical habitat for the Florida leafwing.

96.     The allegations in Paragraph 96 characterize the EA, which speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 96 are inconsistent with the EA, those allegations are denied.  University of Miami denies the remaining allegations in Paragraph 96.

97.     University of Miami denies the allegations in Paragraph 97.  Responding further, University of Miami states that the allegations in Paragraph 97 are inconsistent with the Service's evaluation and conclusions regarding the Project.

***Miami tiger beetle***

98.     The allegations in Paragraph 98 characterize the Miami tiger beetle and appear to describe a Service fact sheet on Miami tiger beetles or the Service's final rule listing the species, which speak for themselves and are the best evidence of their contents.  To the extent the allegations in Paragraph 98 are inconsistent with the Service fact sheet on Miami tiger beetles or the Service's final rule listing the species, those allegations are denied.  University of Miami admits that no comprehensive studies or surveys for Miami tiger beetles have been conducted on the Project site but states that no methodologies for such a study or survey exist for the Miami tiger beetle.  Responding further, University of Miami states that portions of the Project site were surveyed during the Service's evaluation of the Project.

99.     University of Miami admits that the Project will develop 32.91 acres of pine rocklands habitat and 53.58 acres of disturbed land.  University of Miami denies the remaining allegations in Paragraph 99.  University of Miami further states that the EA and HCP speak for

themselves and are the best evidence of their contents, and denies the allegations of footnote 3 to the extent they are inconsistent with the EA and HCP.

***Florida Bonneted Bat***

100.     University of Miami admits the allegations in paragraph 100 that there have been acoustic surveys for Florida bonneted bats but deny Plaintiffs' interpretation of those surveys, which speak for themselves and are the best evidence of their contents.   University of Miami denies that active bat roost sites have been found on the Project site.   The remaining allegations in paragraph 100 purport to describe a 2013 species listing by the Service, which speaks for itself and is the best evidence of its contents.   To the extent the allegations in Paragraph 100 are inconsistent with the 2013 species listing, those allegations are denied.

101.     University of Miami denies that the Project would permanently destroy 86.35 acres of land that is likely used by the Florida bonneted bat.   Responding further, University of Miami states that the EA speaks for itself and is the best evidence of its contents.   To the extent the remaining allegations in Paragraph 101 are inconsistent with the EA, those allegations are denied.

***Eastern Indigo Snake***

102.     The allegations in Paragraph 102 appear to describe a 1978 species listing by the Service, which speaks for itself and is the best evidence of its contents.   To the extent the allegations in Paragraph 102 are inconsistent with the 1978 species listing, those allegations are denied.   University of Miami admits that the eastern indigo snake has not been reported in the Project area and denies the remaining allegations in Paragraph 102.

103.     The allegations in Paragraph 103 appear to describe a 1978 species listing by the Service, which speaks for itself and is the best evidence of its contents.   To the extent the

allegations in Paragraph 103 are inconsistent with the 1978 species listing, those allegations are denied.

104.    The allegations in Paragraph 104 purport to describe an article by Krysko et al., which speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 104 are inconsistent with the article, those allegations are denied.  Furthermore, the Service has identified recent research that refutes the conclusions of the Krysko et al. article.

***Gopher Tortoise***

105.    University of Miami states that the ESA and federal listings of threatened species speak for themselves and are the best evidence of their contents.  To the extent the allegations in Paragraph 105 and footnote 4 are inconsistent with those documents, they are denied. The remainder of Paragraph 105 appears to describe a Service fact sheet concerning the gopher tortoise which speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 105 are inconsistent with the species fact sheet, those allegations are denied.

106.    Paragraph 106 appears to describe a Service fact sheet concerning the gopher tortoise which speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 106 are inconsistent with the species fact sheet, those allegations are denied.

***Florida Brickell-bush & Carter's small-flowered flax***

107.    The allegations in Paragraph 107 appear to describe a 2014 species listing by the Service, which speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 107 are inconsistent with the 2014 species listing, those allegations are denied.  University of Miami admits the allegations in paragraph 107 regarding the nature of pine rocklands habitat, but denies that the Project would result in the loss of "critical" habitat because

the HCP will enhance the overall conservation value of the remaining critical habitat on the Project site.

***Tiny polygala & deltoid spurge***

108.    The allegations in Paragraph 108 appear to describe a 1985 species listing by the Service, which speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 108 are inconsistent with the 1985 species listing, those allegations are denied.  The allegations in Paragraph 108 purport to describe surveys and deed restrictions associated with the Project's off-site mitigation area, which speak for themselves and are the best evidence of their contents.  To the extent that the allegations in Paragraph 108 are inconsistent with the articles and the deed restrictions associated with the Project's off-site mitigation area, those allegations are denied.  University of Miami denies the allegation that no species surveys were conducted for the off-site mitigation area.

***Pineland sandmat, Everglades bully, Florida pineland crabgrass, and Florida prairie-clover***

109.    University of Miami stats that the Service's threatened species list speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 109 are inconsistent with that document, they are denied.  The remaining allegations in Paragraph 109 purport to describe the 2017 listing rule, which is the best evidence of its contents.  To the extent that the allegations in Paragraph 109 are inconsistent with the 2017 species listing, the allegations in Paragraph 109 are denied.  University of Miami admits that declines for each of these plants are partially attributed to fire suppression, inadequate fire management and resulting habitat loss.  University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations regarding the Service's position on other development projects and therefore denies them. University of Miami denies the remaining allegations in Paragraph 109.

110.     University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 110 and therefore denies them.

**B.     HABITAT CONSERVATION PLAN & ENVIRONMENTAL ASSESSMENT**

111.     University of Miami states that the draft EA speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 111 are inconsistent with the draft EA, those allegations are denied.  Responding further, University of Miami admits that the HCP results in a net benefit to listed species in the area, as found by the Service.

112.     The allegations in Paragraph 112 purport to describe the draft HCP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 112 are inconsistent with the draft HCP, those allegations are denied.

113.     The allegations in Paragraph 113 purport to describe the HCP and EA, which speak for themselves and are the best evidence of its contents.  To the extent that the allegations in Paragraph 113 are inconsistent with the HCP or EA, those allegations are denied.

114.     The allegations in Paragraph 114 purport to describe the HCP and EA, which speak for themselves and are the best evidence of its contents.  To the extent that the allegations in Paragraph 114 are inconsistent with the HCP or EA, those allegations are denied.

115.     The allegations in Paragraph 115 purport to describe the HCP and EA, which speak for themselves and are the best evidence of its contents.  To the extent that the allegations in Paragraph 115 are inconsistent with the HCP or EA, those allegations are denied.

116.     The allegations in Paragraph 116 purport to describe the HCP and EA, which speak for themselves and are the best evidence of its contents.  To the extent that the allegations in Paragraph 116 are inconsistent with the HCP or EA, those allegations are denied.

117.     University of Miami denies the allegations in Paragraph 117.

118.    The allegations in Paragraph 118 purport to describe the HCP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 118 are inconsistent with the HCP, those allegations are denied.

119.    University of Miami denies the allegations in Paragraph 119.

120.    The allegations in Paragraph 120 purport to describe the HCP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 120 are inconsistent with the HCP, those allegations are denied.

121.    The allegations in Paragraph 121 purport to describe the HCP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 121 are inconsistent with the HCP, those allegations are denied.

122.    University of Miami denies the allegations in Paragraph 122.

123.    University of Miami denies the allegations in Paragraph 123.

124.    The allegations in Paragraph 124 purport to describe the HCP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 124 are inconsistent with the HCP, those allegations are denied.

125.    University of Miami denies the allegations in Paragraph 125.

126.    University of Miami states that the HCP speaks for itself and is the best evidence of its contents.  To the extent the allegations in Paragraph 126 are inconsistent with the HCP, those allegations are denied.

127.    The allegations in Paragraph 127 purport to describe the HCP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 127 are inconsistent with the HCP, those allegations are denied.

128.    The allegations in Paragraph 128 purport to describe portions of the HCP, which speaks for themselves and are the best evidence of their contents.  To the extent that the allegations in Paragraph 128 are inconsistent with the HCP, those allegations are denied. University of Miami denies the allegations in Paragraph 128 that Appendix L and Appendix N of the HCP are missing essential details, as those details are provided in the body of the HCP.

129.    The allegations in Paragraph 129 purport to describe the HCP, EA, and a transportation analysis, which speaks for themselves and are the best evidence of their contents. To the extent that the allegations in Paragraph 129 are inconsistent with those documents, those allegations are denied.

130.    The allegations in Paragraph 130 purport to describe the transportation analysis, HCP, and the EA, which speaks for themselves and are the best evidence of their contents.  To the extent that the allegations in paragraph 130 are inconsistent with those documents, they are denied.  University of Miami admits that the Miami Wilds project was not included in the cumulative analysis because it is not a project that is reasonably certain to occur.

131.    University of Miami denies the allegations in Paragraph 131.

132.    University of Miami lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 132 and therefore denies them.  Responding further, the University of Miami states that it is not involved with the proposed Miami Wilds project and therefore does not have information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 132 regarding that project.

133.    Paragraph 133 makes allegations regarding certain surveys conducted by Permittees, which surveys speak for themselves and are the best evidence of their contents.  To

the extent the allegations in Paragraph 133 are inconsistent with the Permittees' surveys, those allegations are denied.

134.    University of Miami denies the allegations in Paragraph 134.

135.    The allegations in Paragraph 135 purport to describe the HCP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 135 are inconsistent with the HCP, those allegations are denied.

136.    Paragraph 136 makes allegations regarding certain surveys conducted by Permittees, which surveys speak for themselves and are the best evidence of their contents.  To the extent the allegations in Paragraph 136 are inconsistent with the Permittees' surveys, those allegations are denied.

137.    University of Miami denies the allegations in Paragraph 137.

**C.    THE BIOLOGICAL OPINION**

138.    The allegations in Paragraph 138 purport to describe the biological opinion ("BiOP"), which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 138 are inconsistent with the BiOp, those allegations are denied.

139.    The allegations in Paragraph 139 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 139 are inconsistent with the BiOp, those allegations are denied.

140.    The allegations in Paragraph 140 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 140 are inconsistent with the BiOp, those allegations are denied.

141.    The allegations in Paragraph 141 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 141 are inconsistent with the BiOp, those allegations are denied.

142.    The allegations in Paragraph 142 purport to describe the conference opinion, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 142 are inconsistent with the conference opinion, those allegations are denied.

143.    The allegations in Paragraph 143 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 143 are inconsistent with the BiOp, those allegations are denied.

144.    The allegations in Paragraph 144 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 144 are inconsistent with the BiOp, those allegations are denied.

145.    The allegations in Paragraph 145 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 145 are inconsistent with the BiOp, those allegations are denied.

146.    The allegations in Paragraph 146 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 146 are inconsistent with the BiOp, those allegations are denied.

147.    The allegations in Paragraph 147 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 147 are inconsistent with the BiOp, those allegations are denied.

148.    The allegations in Paragraph 148 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 148 are inconsistent with the BiOp, those allegations are denied.

149.    The allegations in Paragraph 149 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 149 are inconsistent with the BiOp, those allegations are denied.

150.    The allegations in Paragraph 150 purport to describe the BiOP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 150 are inconsistent with the BiOp, those allegations are denied.

151.    The allegations in Paragraph 151 purport to describe the incidental take statement, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 151 are inconsistent with the incidental take statement, those allegations are denied.

152.    The allegations in Paragraph 152 purport to describe the HCP, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in Paragraph 152 are inconsistent with the HCP, those allegations are denied.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

153.    University of Miami incorporates by reference its answers to Paragraphs 1 through 152 as though fully set forth herein.

154.    The allegations in Paragraph 154 are conclusions of law that require no response, and to the extent a response is required, the allegations are denied.

155.    University of Miami denies the allegations in Paragraph 155.

156.    University of Miami denies the allegations in Paragraph 156.

157.    University of Miami denies the allegations in Paragraph 157.

158.    University of Miami denies the allegations in Paragraph 158.

159.    University of Miami denies the allegations in Paragraph 159.

## SECOND CLAIM FOR RELIEF

160.    University of Miami incorporates by reference its answers to Paragraphs 1 through 159 as though fully set forth herein.

161.    University of Miami denies the allegations in Paragraph 161.

162.    University of Miami denies the allegations in Paragraph 162.

163.    University of Miami denies the allegations in Paragraph 163.

164.    University of Miami denies the allegations in Paragraph 164.

165.    University of Miami denies the allegations in Paragraph 165.

166.    University of Miami denies the allegations in Paragraph 166.

167.    University of Miami denies the allegations in Paragraph 167.

168.    University of Miami denies the allegations in Paragraph 168.

169.    University of Miami denies the allegations in Paragraph 169.

170.    University of Miami denies the allegations in Paragraph 170.

171.    University of Miami denies the allegations in Paragraph 171.

## VII.    PRAYER FOR RELIEF

Responding to Plaintiffs' Prayer for Relief, University of Miami denies that Plaintiffs are entitled to any of the relief they seek or to any other relief whatsoever.

**WHEREFORE**, having answered Plaintiffs' Complaint, University of Miami prays for judgment in its favor and against Plaintiffs on all claims asserted in the Complaint and for such other and further relief as the Court deems just and proper

## AFFIRMATIVE DEFENSES

University of Miami states the following affirmative defenses to Plaintiffs' Complaint without assuming the burden of proof where such burden falls upon Plaintiffs.  University of Miami reserves the right to amend or supplement its affirmative defenses as may be necessary.

27

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because they lack standing to assert those claims in this action.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to the relief they seek because they failed to raise each of their claims before the Service and otherwise failed to exhaust their administrative remedies.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of waiver.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of ripeness.

University of Miami expressly incorporates by reference any affirmative defense asserted by Defendants or Intervenor-Defendants to the extent they do not conflict with the affirmative defenses expressly stated above.

Dated: January 24, 2018                Respectfully submitted,

                                       **GREENBERG TRAURIG, P.A.**

                                       By:*/s/ Mark A. Salky*
                                           Mark A. Salky, Esq. FBN 58221
                                           salkym@gtlaw.com
                                           burkek@gtlaw.com
                                           FLService@gtlaw.com
                                           Eva M. Spahn, Esq., FBN 0092063
                                           spahne@gtlaw.com
                                           cruzm@gtlaw.com
                                           FLService@gtlaw.com
                                           333 S.E. 2nd Avenue, Suite 4400
                                           Miami, Florida 33131
                                           Telephone:  (305) 579-0500
                                           Facsimile:  (305) 579-0717

                                       *Attorneys for Intervenor-Defendant University of Miami*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed on January 24, 2018 via the Court's CM/ECF system, which will forward a copy of the foregoing, together with the notice of electronic filing of same, via email to all counsel of record.

/s/ Mark A. Salky
MARK A. SALKY, ESQ.