UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:17-cv-24444-UNGARO/TURNOFF

CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,

    *Plaintiffs*,

v.

RYAN ZINKE, etc., *et al.*,

    *Defendants*,

and

CORAL REEF RETAIL, LLC, *et al.*,

    *Intervenor Defendants*.
_____/

## JOINT PLANNING AND SCHEDULING REPORT
## AND PROPOSED SCHEDULING ORDER

    Plaintiffs, Center for Biological Diversity, Tropical Audubon Society, Miami Pine Rocklands Coalition, and South Florida Wildlands Association ("Plaintiffs"); Defendants, Ryan Zinke, in his official capacity as Secretary of the U.S. Department of Interior, U.S. Department of the Interior, U.S. Fish and Wildlife Service, Greg Sheehan, in his official capacity as Principal Deputy Director of the U.S. Fish and Wildlife Service, and Jim Kurth, in his official capacity as Deputy Director for operations and Acting Director of U.S. Fish and Wildlife Service ("Defendants"); and Intervenor-Defendants, Coral Reef Retail, LLC, Coral Reef RESI PH 1, and LLC, RAMDEV, LLC ("Coral Reef Permittees") and the University of Miami (together with the Coral Reef Permittees, the "Permittees"), pursuant to the Court's Order Setting Initial Planning And Scheduling Conference [Doc. 58] and S.D. Fla. L.R. 16.1, conducted a scheduling conference on January 26, 2018 and hereby file the following joint scheduling report and incorporated proposed joint scheduling order for consideration by the Court.

1. **A plain statement of the nature of the claim and any counterclaims, cross-claims, or third-party claim, including the amount of damages claimed and any other relief sought.**

Plaintiffs' Statement

Plaintiffs are environmental organizations who filed this action to challenge the U.S. Fish and Wildlife Service's ("Service") decision to permit a 137-acre shopping center and apartment complex development ("the Project") on the Richmond Pine Rocklands tract ("Richmond Area") near Miami-Dade's Metro Zoo, which will result in the destruction of some of the last pine rocklands in Florida. Pine rocklands are comprised of limestone outcrops with canopies dominated by slash pine and serve as habitat for many endemic yet imperiled plants and animals. These unique ecosystems have been severely reduced from development and today may be found only in small fragments in south Florida. Pine rocklands are only found in Miami-Dade, Monroe, and Collier counties and the Bahamas and Cuba. Approximately 22,790 acres of pine rockland are present in Miami-Dade County, with 19,840 acres in Everglades National Park. This remaining habitat represents about 11 percent of the historic extent of pine rocklands before development.

The Richmond Area is a 4-square mile area that contains approximately 883.1 acres of pine rockland habitat, of which 578.4 acres are owned by Miami Dade County ("MDC"), 157.6 acres are owned by the federal government, 67.1 acres are owned by the University of Miami, and 79.9 acres are within the Project site.

The Project, which is to include 900 apartments and nearly 300,000 square feet of big box commercial space and associated surface parking, will wipe out and fragment these disappearing pine rocklands even further. The Project site includes habitat for several of Florida's most iconic yet endangered native species like the Florida bonneted bat, Florida leafwing butterfly, Bartram's scrub-hairstreak butterfly, Miami tiger beetle, eastern indigo snake, Rim Rock crowned snake, gopher tortoise, white-crowned pigeon, Everglades bully, Florida brickell-bush, Carter's small-flowered flax, deltoid spurge, and tiny polygala, as well as the Dade County pine (*Pinus elliottii* var. *densa*), a slash pine that is included in the International Union for the Conservation of Nature and Natural Resources' (IUCN) Red List of Threatened Species, regarded as the most objective approach for evaluating the conservation status of plants and animals. According to the Service's own analysis, the Project will result in the loss of more than 80 acres of habitat, including critical habitat for several species, and further fragment remaining habitat in the Richmond Area.

2

The Developer proffered a habitat conservation plan ("HCP") as a requirement of receiving an incidental take permit (ITP) for endangered and threatened species impacted by the Project. The HCP for the Project covers 22 sensitive species, including the federally endangered Bartram's scrub-hairstreak butterfly, the federally threatened eastern indigo snake, the federally endangered Florida bonneted bat, the federally endangered Florida leafwing butterfly, the federally endangered Miami tiger beetle, the federal candidate gopher tortoise, the state threatened white-crowned pigeon, and the rim rock crowned snake, which is under review for ESA protection. The ITP also covers five federally endangered plants, three federally threatened plants, and one state endangered plant.

The Developer's proffered mitigation on-site includes 23.92 acres in a "west preserve," 21.61 acres in an "east preserve," 2.16 acres in a "southern corridor," 3.72 acres of rockland hammock, and 3.88 acres of "stepping stones." The off-site mitigation includes 50.96 acres owned by the University of Miami. A deed restriction was recorded on the off-site mitigation parcel in 2000, which prohibited removal or destruction of trees, shrubs, and vegetation, and any other activity that would damage habitat, and required management according to a conservation management plan that includes control of exotic plants through prescribed fire. The obligation to implement the conservation management plan runs with the land.

The Service issued a biological opinion ("BiOp") after reviewing the impacts of the Project during formal Endangered Species Act (ESA) consultation. The BiOp concluded, among other things, that 86.49 acres of the site will be replaced with development associated with the Project. It also concluded that the Project would clear and grade 32.28 acres of habitat the Bartram's scrub-hairstreak butterfly is likely to occupy, resulting in harassment of about 16 butterflies and the death of all eggs, larvae, and pupae in that area. The BiOp found the development would destroy and occupy 39.47 acres of critical habitat for the Bartram's scrub-hairstreak butterfly and Florida leafwing butterfly. It also found the Project would destroy 57.85 acres of potential Miami tiger beetle habitat. The BiOp also concluded that the Project would result in construction on 73.73 acres of vegetated land suitable for the eastern indigo snake, resulting in harm to 2-3 snakes.

The Service received approximately 3,000 comments on the Project, the majority of which were in opposition to the project. Some of the comments offered expertise on the Project, species, and issues under consideration.

On December 5, 2017, the Service announced via a press release that it had approved the Coral Reef Commons HCP and issued an ITP for the Project. The ITP was issued for a period of 30 years. The HCP includes various measures proffered to minimize and mitigate impacts. The Permittees commenced clearing the Project site early on the morning of December 5, 2017, before the Service emailed stakeholders notice of the permit's issuance.

Plaintiffs' complaint alleges that the Service acted unlawfully and in violation of the National Environmental Policy Act (NEPA) and the Administrative Procedure Act (APA) in approving the Developer's Habitat Conservation Plan (HCP) and issuing an Incidental Take Permit (ITP), Biological Opinion (BiOp), and Environmental Assessment (EA) associated with the permit. The HCP arbitrarily allows the Developers to take credit for preserving land already under a conservation deed restrictions, and relies on a "Habitat Functional Assessment" that is neither species specific nor capable of independent evaluation.

In addition, Plaintiffs have provided notice of their intent to file claims under the Endangered Species Act (ESA) and will amend their complaint to assert these claims on February 23, 2018, when the statutorily required notice period terminates.

The Service's decision to issue the permit was arbitrary and capricious and contrary to law for various reasons including that the Service:

- arbitrarily accepted the Developers' unprecedented "Habitat Functional Assessment" (HFA) to measure impacts to endangered and threatened species when the HFA: (1) never identifies how the habitat supposedly evaluated actually relates to the specific species of concern; and (2) nowhere explains how habitat was scored for purposes of evaluating impacts;
- arbitrarily credited as mitigation or minimization of the Project's impacts the Developers' commitment to conserve off-site property that is already under an conservation deed restriction dating back to 2000;
- failed to provide a numerical "trigger" for permitted "take" of endangered species and did not justify or even explain its purported use of a surrogate for a numerical take limit;
- did not make a required "finding of no significant impact" (FONSI) available for public review for 30-days, as required by NEPA;
- did not consider a reasonable range of alternatives in its EA as NEPA requires; and

4

- did not prepare an Environmental Impact Statement (EIS) which NEPA requires for projects that may significantly affect the quality of the environment, which this Project does since it contemplates the destruction of nearly 87 acres of exceptionally rare habitat inhabited by many protected species.

Plaintiffs do not seek monetary damages. Rather, they seek a declaration that the Service's actions in connection with issuance of the ITP, BiOp, and EA violate the APA and NEPA. Plaintiffs request that the Court enjoin the Service from authorizing further action under the Permit until such time as the Service complies with the APA, NEPA and ESA.

Joint Statement by the U.S. Government and the Permittees

The Permittees have filed answers to Plaintiffs' Complaint denying its essential allegations and raising affirmative defenses. (ECF 79 & 81.) No counterclaims have been asserted. Defendants' answer is currently due February 19, 2018, but given that Plaintiffs have announced their intention to file an Amended Complaint, the Parties have agreed that Defendants should file their answer within 14 days of service of the Amended Complaint. (ECF 50.)

The Coral Reef Commons Project is a mixed-use development. The potential impacts of the Project on endangered species and habitat were evaluated under the HCP submitted to the Service for its evaluation under the relevant laws.

The complaint challenges an incidental take permit ("ITP") and biological opinion ("BiOp") issued by Defendant U.S. Fish and Wildlife Service (the "Service") in connection with a habitat conservation plan ("HCP") covering the development of the Coral Reef Permittees' mixed-use project known as Coral Reef Commons ("Project"), which is located near 152 Street and 127 Avenue, in Miami-Dade County, Florida. The Project site includes 137.90 acres onsite, of which Permittees would develop 82.61 acres for the anticipated mixed uses. The Coral Reef Permittees will restore and preserve 51.41 acres, and restore 3.88 acres as habitat "stepping stones" on site. The Project also includes the preservation and management of a nearby 50.96 acre parcel owned by Permittee University of Miami for a total of 106.25 acres of on-site and off-site mitigation. The ITP authorizes the incidental take of the following species, referred to in the ITP as the Covered Species: Federally endangered Bartram's scrub-hairstreak butterfly (Strymon acis bartrami), Florida leafwing butterfly (Anaea troglodyta floridais), Florida bonneted bat (Eumops floridanus), and Miami tiger beetle (Cicindelidia floridana); Federally threatened eastern indigo snake (Drymarchon corais couperi); State listed gopher tortoise (Gopherus polyphemus), State

listed rim rock crowned snake (Tantilla oolitica), and the State listed white-crowned pigeon (Patagioenas leucocephala). The take would be incidental to the development of the Project and the implementation of the associated HCP. Although no incidental take permits are required for impacts to listed plants on private lands, the Permittees will also implement conservation measures to benefit 14 Federally-listed plant species in the Project area. The 82.61 acres to be developed include areas that were previously developed, disturbed uplands and pine rocklands subjected to a variety of historic impacts, such as scraping, lack of vegetation management, or fire suppression.

The HCP evaluated the baseline conditions of the Project site and the effect that the Project development would have on pine rockland habitat and endangered species. The HCP focused the Project development to the areas of the Project site with the lowest ecological value, required remaining habitat to be restored through the removal of invasive species, and required future maintenance of the Project site preserves. The Service issued the ITP after concluding that the mitigation proposed by the HCP would minimize and mitigate Project Effects to habitat and would species, to the maximum extent practicable. The challenged ITP is the result of several years of close agency scrutiny by the Service and extensive public comment. As a result, the Project has been repeatedly refined and improved, increasing environmental benefits and reducing potential impacts. The Service concluded that, under the HCP, the Project meets statutory and regulatory issuance criteria.

The ITP decision documents are well reasoned and grounded in an extensive administrative record as interpreted by the expert agencies. Plaintiffs have been afforded and taken advantage of an opportunity to participate in this process. Many of the issues now raised by Plaintiffs were already addressed by the Service during the past 3 ½ years.

<u>Coral Reef Permittees' Statement</u>

Since 2011, Coral Reef Permittees have invested over $40 million in the Project and are incurring costs on a daily basis since the entry of the Temporary Restraining Order ("TRO"). This investment includes the purchase of the property, interest on loans, consultant fees, and the other expenses in bringing the Project to fruition.

<u>Procedural Posture</u>

On December 8, 2017, Plaintiffs filed a complaint for declaratory and injunctive relief [Doc. 1] and an ex parte emergency motion for a temporary restraining order and/or preliminary

injunction against the federal Defendants [Doc. 4].  The same day, the Court granted the motion for a temporary restraining order.  [Doc. 10.]

Thereafter, Magistrate Judge Turnoff granted separate motions to intervene filed by Permittees.

On January 3, 2018, Magistrate Judge Turnoff presided over a full-day hearing on Plaintiffs' motion for preliminary injunction.  [Doc. 75. (transcript).]

On January 17, 2018, Magistrate Judge Turnoff entered a Report and Recommendation, which concluded that Plaintiffs' motion for preliminary injunction should be denied.  Magistrate Judge Turnoff concluded good cause existed to extend this Court's temporary restraining order pending further order of the court. On January 31, 2018, Plaintiffs filed their Objections to Magistrate Judge's Report and Recommendation ("Objections").  [Doc. 82.].  Responses to the Objections are due on or before February 14, 2018.

**2. A brief summary of the facts which are uncontested or which can be stipulated to without discovery.**

This is a record review case.  Therefore, no discovery beyond production of the administrative record is appropriate.  *See, e.g., Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *Camp v. Pitts*, 411 U.S. 138 (1973); *Preserve Endangered Areas of Cobb's History v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996).

The case will likely be resolved on cross motions for summary judgments.  Plaintiffs believe that, provided the Service can compile a complete administrative record by February 23, 2018, the cross summary judgment motions can be fully briefed by the beginning of May.

- The Project is in the northern portion of the Richmond Area. The entire Richmond Area encompasses approximately 4 square miles and is roughly bound by S.W. 152nd Street to S.W. 184th Street, and S.W. 117th Avenue to S.W. 137th Avenue. The Richmond Area also includes, among other things Zoo Miami, a U.S. Department of Defense installation, affordable housing, and a U.S. Coast Guard facility.

- In 2011, the Coral Reef Permittees signed a contract to purchase from the University of Miami a 137.90-acre tract of land, with the intention of developing the mixed-use residential and commercial Project.

- On July 15, 2014, the Service sent a letter to the Permittees regarding the possible presence of listed wildlife species and plants in the proposed Project site and requesting that the Permittees conduct wildlife surveys. In response, the Permittees agreed to secure an ITP and develop an HCP covering both construction and mitigation activities.
- On March 23, 2017, the Service announced the availability of a proposed draft HCP and a draft Environmental Assessment ("EA") for public review and comment.
- On April 27, 2017, the Service hosted a webinar (internet seminar) regarding the ITP process.
- The Service issued a BiOp on November 30, 2017.
- On December 5, 2017, the Service approved the Coral Reef Commons HCP and issued an ITP for the Project. The ITP was issued for a period of 30 years.
- On December 5, 2017, the Service issued a Set of Findings explaining its decision to issue the ITP. This included a Finding of No Significant Impact pursuant to NEPA.
- On December 8, 2017, the Service received a notice letter from Plaintiffs concerning their intent to sue under the ESA.

3. **A brief summary of the issues as presently known.**
   Plaintiffs have obtained an ex parte temporary restraining order, which has been in place since December 8, 2017.
   Plaintiffs seek a preliminary injunction to enjoin all actions under the ITP until such time as the Court may resolve this action on its merits. (ECF 4.)
   Plaintiffs have also moved to strike the declaration of Churchill Lee Roberts IV (ECF 52) filed by the Coral Reef Permittees.

4. **Whether discovery should be conducted in phases or limited to particular issues.**
   This is a record review case. Therefore, no discovery beyond the production of the administrative record is appropriate.

5. **A detailed schedule of discovery for each party.**
   N/A

6. **Proposed deadlines for joinder of other parties and to amend the pleadings, to file and hear motions and to complete discovery.**
   At this time, the parties do not anticipate the need to add any additional parties.

>Plaintiffs will request leave to amend their Complaint when the ESA 60-day notice period expires on or about February 23, 2018. All motions for leave to amend the pleadings should be filed on or before February 28, 2018.
>
>The Parties agree that Defendants may submit their answer fourteen days after Plaintiffs file their amended complaint.
>
>This is a record review case. Therefore, no discovery beyond the production of the administrative record is appropriate. The Defendants anticipate that the administrative record will be produced to Plaintiffs and Permittees on or around February 23, 2018.

**7. Proposed approximate dates for final pre-trial conferences and trial.**

The parties propose the following schedules:

| **Plaintiffs' Proposed Schedule** | **Defendants' and Permittees' Proposed Schedule** |
|---|---|
| Plaintiffs to file their Amended Complaint adding ESA claims no later than February 23, 2018 | Plaintiffs to file their Amended Complaint adding ESA claims no later than February 23, 2018 |
| Defendants to complete and file the Administrative Record by February 23, 2018 | Defendants to complete and file the Administrative Record by February 23, 2018 |
| All Plaintiffs to file motion for summary judgment by March 16, 2018 (limited to combined 30 pages) | Plaintiffs to move for summary judgment by March 16, 2018 (standard page limit) |
| Defendants and Intervenors to file their responses and cross-motions for summary judgment by April 6, 2018 (limited to 15 pages for Federal Defendants and 15 pages for Intervenors) | Coral Reef Permittees, the University, and Defendants to each file responses to summary judgment / cross-motions for summary judgment by March 30, 2018 (limited to 20 pages each) |
| All Plaintiffs to file their response and reply by April 20, 2018 (limited to combined 30 pages) | Plaintiffs to file a single response to Coral Reef Permittees, the University, and Defendants' cross-motions for summary judgment / replies to Plaintiffs' motion for summary judgment by April 13, 2018 (limited to 20 pages) |
| Defendants and Intervenors to file their replies by May 4, 2018 (limited to 15 pages for Federal Defendants and 15 pages for Intervenors); | Coral Reef Permittees, the University, and Defendants to each file replies to Plaintiffs' responses to cross-motions for summary judgment by April 27, 2018 (limited to 10 pages each) |

| | |
|---|---|
| The Court to conduct a hearing if desired at the Court's convenience. | *** Coral Reef Permittees and the University will work together in an attempt to file joint briefs. |

This is an action for review based on an administrative record, which is likely to be resolved on dispositive motions. Thus, there is likely no need for a trial, and no need for party projections of time necessary for trial and/or party statements of whether the case is a jury or non-jury trial.

8. **The projected time necessary for trial and a statement of whether the case is jury or non-jury trial.**

This is an action for review based on an administrative record, which is likely to be resolved on dispositive motions.

9. **A list of all pending motions, whether each motion is "ripe" for review, the date each motion became ripe, and a summary of the parties' respective positions with respect to each ripe motion.**

    1. Plaintiffs' Motion for Preliminary Injunction (ECF 4) which was fully briefed as of December 22, 2017. On January 17, 2018, Magistrate Judge Turnoff issued his Report and Recommendation, wherein Magistrate Judge Turnoff recommended that the Plaintiffs' Motion for Preliminary Injunction be denied. (ECF 80). On January 31, 2018, Plaintiffs filed the Objections to the R&R, which are not yet ripe as responses are not due to be filed until on or before February 14, 2018.

       Plaintiffs' Position: Plaintiffs believe preliminary injunctive relief is appropriate in this case to maintain the status quo while the case can be resolved on its merits, which, because no discovery is required, can be accomplished on an expedited basis. If allowed to go forward under a demonstrably defective permit, the Developers will destroy and develop sensitive habitat that serves as critical habitat for numerous endangered and threatened plants and species. Plaintiffs are likely to prevail on their claims that the Service acted arbitrarily, capriciously and contrary to law in issuing the permits as demonstrated in the injunction motion. The R&R, in recommending denial of preliminary injunctive relief, made numerous errors of law and fact as shown in Plaintiffs' objections,

(ECF 82), including, most glaringly, that the R&R misapprehended the respective parties' roles in connection with the issuance of the permit at issue.

*Permittees' and Defendants' position*: Permittees and Defendants maintain that a preliminary injunctive relief is inappropriate as Plaintiffs have failed to meet their burden of demonstrating that such extraordinary relief is warranted. Magistrate Judge Turnoff, after considering the parties' various briefs on the merits and after presiding over a full-day hearing on January 3, 2018, recommended denial of Plaintiffs' motion for preliminary injunction. (ECF 80). The aspects of the permit to which Plaintiffs object were developed through several years of close agency scrutiny and meaningful public comment – including extensive comments from Plaintiffs – and are well reasoned and fully explained in the extensive administrative record. Granting a preliminary injunction will not prevent irreparable harm to the environment, but will prevent the numerous restoration activities required under the HCP from moving forward. Accordingly, Permittees and Defendants maintain that Magistrate Judge Turnoff's Report and Recommendation should be adopted and the Motion for Preliminary Injunction should be denied as Plaintiffs are not likely to succeed on the merits of their claims.

2. Plaintiffs' Motion to Strike in Part Intervenors' Declaration of Churchill Lee Roberts IV (ECF 52), which became ripe on January 9, 2018, when Plaintiffs filed their Reply in support of the motion. (ECF 73.)

Plaintiffs' Position:  This is a record review case. The Service's actions must be evaluated based on the record before the agency at the time the decision was rendered. For this reason, courts hold that post-hoc explanations or rationalizations for agency decisions in the form of after-the-fact affidavits or declarations are improper and should not be considered. Plaintiffs' motion cites the relevant case demonstrating that the Roberts declaration—which is no more than an after the fact effort to prop up an indefensible decision—should be disregarded.  The Federal Defendants have not filed an opposition to Plaintiffs' motion to strike the declaration.

> Defendants' position: Defendants oppose the relief requested in Plaintiffs' motion.
>
> Permittees' position: Permittees have opposed Plaintiffs' Motion. Mr. Roberts' Declaration was offered solely to facilitate the Court's understanding of the record in this case given that the Court is being asked to make regarding preliminary injunction without the benefit of having the full administrative record. To that end, Mr. Roberts' Declaration attempts to navigate the Court through the 3 ½ year process during which the HCP was developed, evaluated, and revised by Permittees and the Service, repeatedly citing important documents such as the HCP, EA, BO, ITP, and Set of Findings that will unquestionably be part of the final administrative record. Rather than strike the entire Declaration, the Court should consider it as a helpful guide through the various documents in the record which speak for themselves and are the best evidence of their contents.

**10. Any potential need for references to a special master or magistrate.**

> None.

**11. The status and likelihood of settlement.**

> Unlikely.

**12. Such other matters as are required by Local Rule 16.1(B) and as may aid the Court in setting the case for status or pretrial conference and in the fair and expeditious administration and disposition of this action.**

> The parties respectfully request that the Court expedite briefing on motions for summary judgment, as the parties believe that, because the case is a record review case, it may be resolved through summary judgment.
>
> Plaintiffs sent Federal Defendants their notice of intent (NOI) to sue for violations of the Endangered Species Act (ESA) pertaining to the Project on December 8, 2017. The NOI was received by Federal Defendants December 8, 2017. Therefore, Plaintiffs intend to amend their complaint to include ESA claims by February 23, 2018. All other claims raised in the complaint are ripe for review.

Respectfully submitted,

By: /s/ Martin J. Alexander
HOLLAND & KNIGHT LLP
Florida Bar No. 346845
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: 305-374-8500
Facsimile: 305-789-7799
martin.alexander@hklaw.com
*Attorneys for Coral Reef Retail, LLC, Coral Reef RESI PH 1, LLC, RAMDEV, LLC*

By: /s/ Paul J. Schwiep
COFFEY BURLINGTON P.L.
Florida Bar Number. FBN 823244
2601 South Bayshore Drive, Penthouse
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261
pschwiep@coffeyburlington.com
*Attorneys for Plaintiffs*

By: /s/ Mark Arthur Brown
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Florida Bar No. 0999405
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 305-0204
Facsimile: (202) 305-0275
mark.brown@usdoj.gov
*Attorneys for Defendants*

By: /s/ George S. LeMieux
GUNSTER
Florida Bar Number. 16403
600 Brickell Avenue, Suite 3500
Miami, Florida 33131
Telephone: 305-376-6000
Facsimile: 305-376-6010
glemieux@gunster.com
*Attorneys for Coral Reef Retail, LLC, Coral Reef RESI PH 1, LLC, RAMDEV, LLC*

By: /s/ Mark A. Salky
GREENBERG TRAURIG, P.A.
Mark A. Salky
Florida Bar Number. 58221
Eva M. Spahn
Florida Bar Number: 0092063
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
salkym@gtlaw.com
spahne@gtlaw.com
*Attorneys for the University of Miami*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 2, 2018, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the Service List below via transmission of Notice of Electronic Filing generated by CM/ECF.

s/ Paul J. Schwiep

| Service List ||
|---|---|
| **George S. LeMieux, Esq.**<br>GLemieux@gunster.com<br>**Angel A. Cortiñas, Esq.**<br>ACortinas@gunster.com<br>**Luna E. Phillips, Esq.**<br>LPhillips@gunster.com<br>**Jonathan H. Kaskel, Esq.**<br>JKaskel@gunster.com<br>GUNSTER<br>600 Brickell Avenue, Suite 3500<br>Miami, Florida  33131<br>Telephone:   (305) 376-6000<br>Facsimile:    (305) 376-6010<br>Secondary:   NSalazar@gunster.com<br>                     JBuck@gunster.com<br><br>*Counsel for Intervenor Defendants Coral Reef Retail, LLC, Coral Reef RESI PH 1, LLC, and RAMDEV LLC* | **Martin J. Alexander, Esq.**<br>Martin.Alexander@hklaw.com<br>**Rafe Petersen, Esq.** *(admitted pro hac vice)*<br>Rafe.Petersen@hklaw.com<br>**Aaron Heishman, Esq.** *(admitted pro hac vice)*<br>Aaron.Heishman@hklaw.com<br>HOLLAND & KNIGHT<br>701 Brickell Avenue, #3300<br>Miami, Florida  33131<br>Telephone:   (305) 374-8500<br>Secondary:   Carmen.Ramsey@hklaw.com<br><br>*Counsel for Intervenor Defendants Coral Reef Retail LLC, Coral Reef RESI PH1 LLC and RAMDEV LLC* |
| **Mark Arthur Brown**<br>Senior Trial Attorney<br>Mark.Brown@usdoj.gov<br>U.S. Department of Justice<br>Environmental and Natural<br>   Resources Division<br>Wildlife and Marine Resources Section<br>Post Office Box 7611<br>Washington, D.C.  20044-7611<br>Telephone:   (202) 305-0204<br>Facsimile:    (202) 305-0275<br><br>**Lucinda J. Bach**<br>Trial Attorney<br>Lucinda.Bach@usdoj.gov<br>U.S. Department of Justice<br>Environmental and Natural<br>   Resources Division<br>Natural Resources Section<br>601 D Street, NW<br>Washington, D.C.  20044<br>Telephone:   (202) 616-9663<br><br>*Counsel for Federal Defendants* | **Mark A. Slaky, Esq.**<br>salkym@gtlaw.com<br>**Eva M. Spahn, Esq.**<br>spahne@gtlaw.com<br>GREENBERG TRAURIG, P.A.<br>333 Southeast 2 Avenue, Suite 4400<br>Miami, Florida  33131<br>Telephone:   (305) 579-0500<br>Facsimile:    (305) 579-0717<br>Secondary:   burkek@gtlaw.com<br>                     FLService@gtlaw.com<br>                     cryzm@gtlaw.com<br><br>*Counsel for University of Miami* |

| | |
|---|---|
| **Vicki Mott** <br> Attorney-Advisor <br> Vicki.Mott@sol.doi.gov <br> U.S. Department of the Interior <br> Office of the Regional Solicitor <br> Southeast Region <br> 75 Ted Turner Drive SW, Suite 304 <br> Atlanta, Georgia  30303 <br> Telephone:   (404) 331-0722 x233 <br><br> *Of Counsel for Federal Defendants* | |